Argued and submitted March 3, decision of Court of Appeals as to First Interstate
Bank reversed and trial court affirmed May 27, 1987

FRANKLIN et ux,
*Respondents on Review,*

*v.*

SAFECO INSURANCE COMPANY OF AMERICA,
*Defendant,*

FIRST INTERSTATE BANK OF OREGON, N.A.,
*Petitioner on Review.*

(TC 33641; CA A33899; SC S33053)

737 P2d 1231

Martin E. Hansen, Bend, argued the cause and filed the petition for petitioner on review. With him on the petition for review was Johnson, Marceau, Karnopp, Petersen & Nash, Bend.

Steven J. Pierce, Ontario, argued the cause for respondent on review and filed a response to petition for review.

CAMPBELL, J.

## CAMPBELL, J.

This case involves the interpretation and application of parts of ORS 73.4190 in a situation where a depositary bank gives provisional credit to a co-payee in the face amount of a draft on which the joint co-payees' names have been forged.

The following parts of ORS 73.4190 are relevant:

"(1) An instrument is converted when:

"* * * * *.

"(c) It is paid on a forged indorsement.

"* * * * *.

"(3) · Subject to the provisions of the Uniform Commercial Code concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in the hands of the representative."

The following definitions are helpful:

"A draft is a negotiable instrument drawn by the drawer ordering the drawee to pay the amount specified." 5 Anderson, Uniform Commercial Code 223 (3rd ed 1984). *See* ORS 73.1040(2)(a).

" 'Depositary bank' means the first bank to which an item is transferred for collection even though it is also the payor bank." ORS 74.1050(1).

" 'Payor bank' means a bank by which an item is payable as drawn or accepted." ORS 74.1050(2).

" 'Collecting bank' means any bank handling the item for collection except the payor bank." ORS 74.1050(4).

■    Before setting out the precise issue it is necessary to discuss the facts, viewing the evidence in the light most favorable to plaintiffs because the trial court dismissed the case after a defense motion for a directed verdict.[1]

---

[1] *Wiggins v. Barrett & Associates, Inc.,* 295 Or 679, 681, 669 P2d 1132 (1983). In the case at bar defendants moved for a directed verdict pursuant to ORCP 60 and the trial court granted an order of dismissal without prejudice under ORCP 54.

On December 22, 1978, plaintiffs contracted to sell their residence property in Bend to Roy Miller and his wife. The contract of sale provided that the Millers would keep the buildings insured against fire with the "loss payable first to the Seller and then to the Buyer, as their respective interests may appear." The Millers purchased a policy of fire insurance from defendant Safeco Insurance Company of America (Safeco).

On December 28, 1980, while there was a balance still owing on the contract of sale, the buildings on the property were substantially damaged by fire.

■  Thereafter, defendant Safeco issued two drafts payable to "Roy Miller and Kindall Franklin and Elsie Franklin" as joint payees in a total sum of $21,335.75 in full settlement of the fire loss. Although the drafts were dated approximately six months apart they were for all practical purposes in the same form. Each draft was drawn by an adjuster of Safeco and was in effect payable through the Head Office of the First National Bank of Oregon "upon acceptance" by Safeco Insurance Companies.[2] A copy of the first and largest draft is attached to this opinion and marked Appendix A.

Shortly after each draft was issued, Roy Miller took it to the East Bend Branch of the First National Bank of Oregon[3] where it was deposited to his account and he was given "provisional credit" in the face amount of the draft.[4] On both drafts the names of Kendall Franklin and Elsie Franklin were forged. The East Bend Branch forwarded each draft to its head office in Portland where they were presented to Safeco which accepted them by the following endorsement.

"PAY FIRST NATIONAL BANK OF OREGON
24-3 Head Office 24-3
Portland, Oregon or Order

---

[2] "A draft with the notation 'upon acceptance' referring to the drawee is negotiable." 5 Anderson, Uniform Commercial Code 208 (3rd ed 1984).

[3] First National Bank of Oregon is the former name of defendant, First Interstate Bank of Oregon.

[4] " 'Provisional credit' means that the depositary bank places a 'hold' on the customer's account and refuses to allow any credit given for the item to be withdrawn before collection is made and the depositary bank has received the proceeds from the drawee/payor bank." *Knesz v. Central Jersey Bank and Trust Co.,* 97 NJ 1, 477 A2d 806, 816 n 7 (1984).

\* \* \*
Safeco Insurance Company of America
\* \* \*
MANAGER'S ACCOUNT"

The head office of the bank then paid the drafts from Safeco's "Manager's Account" and transmitted the funds to the East Bend Branch. The East Bend Branch then withdrew the "provisional credit" restriction from Miller's account.

In August 1982, Miller moved to California and quit paying the plaintiffs on the contract of sale. Later the plaintiffs found out that the fire damage to the buildings had not been repaired and that their names had been forged on the drafts. This action against Safeco and First Interstate Bank of Oregon, N.A., formerly First National Bank of Oregon for conversion of the full amount of the drafts resulted.

In the trial court, defendant Safeco moved for a directed verdict on the grounds that plaintiffs had failed to prove that the forgeries were executed with criminal intent to defraud. The defendant bank joined in the motion for directed verdict and as an additional ground argued that because only Safeco paid the drafts, the bank could not be guilty of conversion under ORS 73.4190(1)(c). The trial court entered a judgment of dismissal in favor of both defendants without prejudice under ORCP 54 on the grounds set out in Safeco's motion for a directed verdict. It did not rule on the bank's additional ground.

On Plaintiffs' appeal to the Court of Appeals, the court first considered the question whether it is necessary to prove criminal intent to claim forgery of an endorsement under the Commercial Code. The court concluded:

"Accordingly, all that the [Commercial Code] requires for a conversion is that the instrument be falsely completed by the addition of the indorsement of a payee without the authority of the payee that the instrument be paid on that indorsement." 80 Or App at 187.

Because Safeco in effect conceded that it paid the drafts in question, the Court of Appeals held that the trial court erred in dismissing the action against that defendant.

Next the Court of Appeals considered the bank's argument that the trial court correctly dismissed the action

against the bank because it did not pay the drafts. The Court of Appeals held that the necessary implication of ORS 73.4190(3) is that even if the bank did not pay the drafts, it is subject to a separate liability as a depositary or collecting bank unless it dealt with the drafts in good faith and in accordance with reasonable commercial standards. Therefore, the Court of Appeals reasoned it was error to dismiss the action as to the bank.

Only the defendant bank petitioned this court for review. It set forth two reasons in its petition:

"1.    The Court of Appeals erroneously created an entirely new cause of action for conversion of negotiable instruments out of the *affirmative defense* contained in the conversion statute, ORS 73.4190(3). * * *.

"2.    The plaintiffs pled, tried and argued only the cause of action for conversion contained in ORS 73.4190(1)(c) and not the cause of action created for the first time by the Court of Appeals in its opinion below." (Emphasis in original.)

On oral argument in this court, both parties agreed that ORS 73.4190(3) provides only an affirmative defense and does not create a separate and independent ground for liability. We agree.

In *Montgomery v. First Nat. Bank,* 265 Or 55, 65, 508 P2d 428 (1973), this court said:

"We hold that defendant bank failed to deal with this draft in accordance with the reasonable commercial standards practiced in the banking business and, therefore, defendant has failed to establish the defense to conversion set forth in ORS 73.4190(3)."

Courts in other jurisdictions have recognized that their statutes which are identical to ORS 73.4190(3) create an affirmative defense. *National Surety Corp. v. Citizens State Bank,* 651 P2d 460 (Colo App 1982); *First Nat. Bank v. Progressive Cas. Ins. Co.,* 517 SW2d 226 (Ky 1974); *Travelers Ins. Co. v. Jefferson Nat. Bank,* 404 So2d 1131 (Fla App 1981).

ORS 73.4190(1)(c) and 73.4190(3) provide for two steps. If a depositary or collecting bank converts a negotiable instrument by paying it on a forged endorsement, then it is relieved of liability if it can plead and prove that it dealt with the instrument in accordance with reasonable commercial

standards.[5]

■ After the parties on oral argument in this court agreed that ORS 73.4190(3) creates an affirmative defense the complexion of the case changed. The parties drew a line on the floor and squared off on the issue of whether the bank "paid" the drafts within the meaning of ORS 73.4190(1)(c). The precise issue is: Does a depositary bank "pay" an instrument when it gives provisional credit to a co-payee in the face amount of a draft on which the joint payees' names have been forged and then later, after the draft has been honored by the drawee, it substitutes unrestricted credit for the provisional credit? We hold that there has been no payment and therefore no conversion by the depositary bank.

The defendant bank takes the position that its East Bend Branch did not pay the draft when Miller tendered it for deposit because at that point it had not been accepted by Safeco. Instead of paying the draft, the branch bank merely gave Miller provisional credit in his account. It further contends that when the draft reached the head office in Portland it was not paid but merely presented to Safeco for acceptance in accordance with ORS 73.1200:

> "An instrument which states that it is 'payable through' a bank or the like designates that bank as a collecting bank to make presentment but does not of itself authorize the bank to pay the instrument."[6]

---

[5] In this case defendant bank as its FOURTH AFFIRMATIVE DEFENSE alleged:

"At all times mentioned in the plaintiffs' fourth amended complaint, defendant dealt with the insurance drafts in question in good faith and in accordance with the reasonable commercial standards applicable to the business of banking."

[6] Bailey, Brady on Checks 1-22, § 1.15 (5th ed 1979) discusses "payable through" drafts as follows:

"In some instances, drafts are issued that are drawn on a non-bank drawee, but stated to be 'payable through' a named bank. Under the Uniform Commercial Code, such an instrument designates the bank as a collecting bank to make presentment, but does not of itself authorize the bank to pay the instrument. While such drafts have many characteristics of checks and are frequently regarded as checks, they are not checks because they are not drawn on a bank, but drawn on a non-bank drawee. The named 'payable through' bank is a collecting and presenting bank, but not a drawee or payor bank.

"Such drafts find wide use. Probably the largest number of 'payable through' drafts are issued by insurance companies to settle claims. In many instances, such drafts may be issued by authorized claim agents of insurance companies drawn on company home offices or centralized locations, and payable through named banks." (Footnotes omitted.)

The defendant bank argues that because it did not pay the drafts it is not guilty of conversion under ORS 73.4190(1)(c) and the case does not reach its affirmative defense under ORS 73.4190(3).

It is the position of the plaintiffs that the defendant bank "under the Uniform Commercial Code, 'paid' the drafts at such time as it extended provisional credit to Miller" and that by "accepting the drafts in question it became the transferee [under ORS 73.2020(1)] and in conjunction therewith made payment of the instruments."[7]

The plaintiffs assert that a jury could find the defendant bank guilty of conversion under ORS 73.4190(1)(c), that the motion for directed verdict should be denied and the defendant bank given the opportunity to prove its affirmative defense before a jury in the trial court.

The most explicit statement we have been able to find on the question of "payment" under ORS 73.4190(1)(c) is in 6 Anderson, Uniform Commercial Code 421 (3d ed 1984):

"There is no conversion within the scope of UCC § 3-419(c) [ORS 73.4190(1)(c)] unless an actual 'payment' is made of the paper bearing the forged indorsement. Thus, the subsection is not applicable when paper is taken for collection only or when an internal banking operation is taken that does not actually make payment of the paper. Whether a handling of the paper, short of 'payment,' constitutes conversion on the ground that it was an unlawful assertion of dominion and control over the paper is to be determined by the continuing non-Code law of conversion.

"By virtue of the fact there must be a payment in order to come within UCC § 3-419(1)(c) [ORS 73.4190(1)(c)], a bank is not liable under this subsection merely because it deposits a check to the depositor's account and stamps the check 'paid.' It is necessary to distinguish between the case of paper being 'paid' on a forged indorsement and that of a person receiving paper in reliance on the validity of a forged indorsement. UCC § 3-419 [ORS 73.4190] applies only when paper is 'paid on a forged endorsement,' and thus does not apply to the case in

---

[7] ORS 73.2020(1) provides:

"Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery."

which the forger deposits the check in his own account." (Footnotes omitted.)[8]

2 Bailey, Oregon Uniform Commercial Code 157 (1984), makes the following observation:

"Under ORS 73.4190(1)(c), a depositary bank may be held liable to the payee whose indorsement is forged. The provision speaks in terms of 'paid on a forged endorsement.' It is probable that the word 'paid' has a broader meaning than 'paid' as applied to the drawee or payor bank and may refer to any other bank or person that cashes a check on a forged indorsement or collects the proceeds and remits them to the forger or his confederate. In other words, a drawee may 'pay' on a forged indorsement, but someone else (such as a depositary bank) may also 'pay.' This view is indicated from the wording of the measure of damages for conversion in ORS 73.4190(2)." [9]

The author of an article in 18 Houston Law Review 173 (1980-81), *Forged Indorsements, Depositary Banks, and the Defense of Section 3-419(3) of the Uniform Commercial Code,* makes the following comments at pages 180-81:

"Section 3-419 [ORS 73.4190] settled the common-law debate over the proper action by the true owner of a check paid over a forged indorsement. In particular, subsection 3-419(1)(c) provides that payment of a check with an unauthorized indorsement is a conversion and creates a definite cause of action for the true owner of the check. If payment is construed to be an exclusive function of the payor bank, then the owner can sue only the payor bank for conversion and the payor must then pursue its rights against transferors who breached their warranties of good title."

Footnote 37 to the above paragraph states:

"Payment is not defined in the Code. If 'paid' as used in

---

[8] In a pre-Uniform Commercial Code case, *Hunt v. Security State Bank,* 91 Or 362, 179 P 248 (1919), this court held that a check had not been "paid" and that the drawer could stop payment on it even though the drawee bank had received the check, had stamped it "paid," and placed it on a spindle for a bookkeeper to enter it into the bank's records. This court pointed out: "All this was merely preparing to pay; it was simply a step toward payment; it was not payment." 91 Or at 370.

[9] ORS 73.4190(2) is as follows:

"In an action against a drawee under subsection (1) of this section the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) of this section the measure of liability is presumed to be the face amount of the instrument."

subsection 3-419(1)(c) is strictly construed, payment of a check may occur only when the payor bank 'pays' the check. If construed less strictly, however, a check may be 'paid' when a depositary bank cashes the checks."[10]

Although Bailey, Brady on Bank Checks (5th ed 1979), does not speak directly to payment or "paid" under ORS 73-4190(1)(c) it does imply that in the normal course of events payment is not made by the depositary bank. The text at 24-16 states:

"The apparent intent of the Code draftsmen in devising [ORS 73.4190(3)] together with the Code 'warranty' provisions, was to channel suits on forged indorsements, whether by the drawer or the payee whose indorsement was forged, as starting against the payor bank. That bank, in turn, could bring in prior collecting banks, and the ultimate loss arising from the forged indorsements should fall on the person who took the check from the forger. In most instances, this would be the depositary bank, although there might be situations where the loss might fall on a person other than a bank, who cashed the check for the forger." (Footnotes omitted.)

White & Summers, Uniform Commercial Code (2d ed 1980), does not address what constitutes "payment" under ORS 73.4190(1)(c) but does acknowledge that a depositary bank may in the first instance be liable. It speaks of the depositary bank "cashing" the instrument. The following appears at pages 589-590:

"Section 3-419 [ORS 73.4190] covers drawees explicitly: when a drawee pays over a forged indorsement it is liable in conversion. The fighting issue in the cases is whether and in what circumstances the *depositary* bank is liable in conversion.

"* * * * *

"What policy supports a restriction upon the liability of depositary and other collecting banks? What policy suggests they should have conversion liability? Assume for example that our thief cashes the check at a depositary bank, the depositary bank passes it on to a collecting bank which passes it to a second collecting bank which procures payment from the drawee. Neither collecting bank had an opportunity to confront the thief and so prevent the theft. Each acted as a

---

[10] ORS 71.1020(1) provides: "The Uniform Commercial Code shall be liberally construed and applied to promote its underlying purposes and policies."

mere conduit between the depositary bank and the drawee bank. One can argue persuasively that neither should be saddled with liability in such a case. But the same argument is not so persuasive with respect to the depositary bank. As we will see, the depositary bank or the other solvent party * * * who cashed the check for the thief will usually bear the ultimate loss—irrespective of the outcome of the conversion case. That party is the one who dealt with the thief, and he might have prevented the loss by more diligently examining the thief's credentials. (Emphasis in original.)"[11]

The combination of the above mentioned authorities stand for the following proposition: Under a liberal construction of ORS 73.4190(1)(c) the true owner of a negotiable instrument may establish a *prima facie* case of conversion against a depositary bank if the bank has actually paid the instrument in cash on a forged endorsement. We agree. The above rule of law is consistent with our result in this case and with our previous case, *Montgomery v. First National Bank, supra.*

■ ▪ This court has considered ORS 73.4190 in only two previous cases, *Berkheimers v. Citizens Valley Bank,* 270 Or 807, 529 P2d 903 (1974), and *Montgomery v. First Nat. Bank, supra.* In *Berkheimers* the defendant bank paid a check when the endorsement of one of the joint payees was missing. This court pointed out: "Both parties rely upon ORS 73.4190(1)(c), but it is not applicable because, strictly speaking, there is no forgery." 270 Or at 810.

Although in this case we reach a different result, our previous case of *Montgomery v. First Nat. Bank, supra,* is on point and many of the facts are strikingly similar. In *Montgomery* a person by the name of Evans Smith purchased a building on a contract of sale from a corporation controlled by R. A. Montgomery. The building was substantially damaged by fire. The insurance company issued a draft in the

---

[11] White & Summers are referring to the implied warranties under ORS 74.2070:

"(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that:

"(a) The customer or collecting bank has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title;

"(* * * * * *."

amount of $5,000 payable jointly to Smith and Montgomery. The draft stated on its face that it was "payable through" a certain bank. Smith forged Montgomery's signature on the draft and presented it to defendant First National Bank. An employe of the defendant bank treated the draft as a negotiable check and paid it.[12] This court on direct appeal from a nonjury trial held that the defendant bank had converted the draft. The court then went to the next step under the affirmative defense of ORS 73.4190(3) and determined that the bank had failed to deal with the draft in accordance with reasonable commercial standards.

In this case defendant bank did not pay the draft. The plaintiffs concede that Miller received "provisional credit," *supra* at 7. In other words, the East Bend Branch deposited the amounts in Miller's account but at the same time placed a "hold" upon the amounts deposited and would not have allowed them to be withdrawn until the proceeds were received from drawee/payor·Safeco by way of the bank's head office. The receipt of the proceeds and the removal of the provisional credit from Miller's account did not constitute retroactive payment of the draft by the East Bend Branch. It was merely a receipt of the funds—the draft had previously been paid by Safeco.[13]

The instruments drawn by Safeco's adjusters to pay for the fire loss were drafts. They were payable "upon acceptance" by Safeco through the head office of First National Bank. Under ORS 73.1200, the head office of the bank was

---

[12] It can be inferred from this court's opinion that Smith was paid $2,000 in cash and the remaining $3,000 was deposited to his account.

[13] In their brief in this court the plaintiffs argue "that Miller, who was the bank's customer, could have written checks on his account after the deposit of the instruments and that the bank would have immediately honored his checks." It is true that the manager of the East Bend Branch testified that Miller would have been allowed to write checks upon the amount deposited to his account, but upon the following basis:

"We would have given him credit, the same as we would for an overdraft or a loan, or anything like that.

"We are issuing it on an overdraft or loan type basis credit. It is not against the drafts.

"* * * * *

"The credit is based on his background with his many loans with us."

The manager of the East Bend Branch also testified that Miller did not "spend [the proceeds of the drafts] until after we were paid by Safeco."

merely a presenting bank and had no authority to pay the drafts. If Safeco had not accepted the drafts they would never have been paid. The East Bend Branch of the bank treated the instruments as drafts and not as negotiable checks. Because the bank did not pay the drafts, there was no conversion by it under ORS 73.4190 (1)(c) and we do not reach the affirmative defense under ORS 73.4190(3).[14]

As to defendant, First Interstate Bank, we reverse the Court of Appeals and affirm the trial court's judgment of dismissal. Defendant, Safeco Insurance Company of America, did not petition for review, therefore, the decision of the trial court is reversed in accordance with the Court of Appeals' decision.

---

[14] Other states that have adopted a statute identical to ORS 73.4190(3) have interpreted and applied it in a variety of different ways. Annot, *Payee's Right of Recovery, in Conversion under UCC § 3-419(1)(c), for Money Paid on Unauthorized Indorsement*, 23 ALR 4th 855 (1983); *Knesz v. Central Jersey Bank and Trust Co.*, 97 NJ 1, 477 A2d 806 (1984).

# APPENDIX A

**SAFECO** Q-1

UPON ACCEPTANCE
PAY TO THE ORDER OF

SAFECO INSURANCE COMPANIES

Roy Miller and Kindall Franklin and Elsie Franklin

The sum of EIGHTEEN THOUSAND FIVE HUNDRED SIXTY-EIGHT AND 84/100 **$ \*\*$18,568.84\*\***

IN SETTLEMENT OF Actual Cash Value of Dwelling less $100.00 deductible

FIRST NATIONAL BANK OF OREGON 24-3/1230
HEAD OFFICE: PORTLAND, OREGON

POR 018654

DATE 2/5/81

Roy Miller INSURED

Sage Insurance AGENT

ADJUSTER

OP 558735
POLICY NO.

Bend, Ore.
AGENCY LOCATION

Bend, Ore.
OFFICE

P9
NO.

LOSS DATE 12/28/80

FIRST A.E.
CAT. CODE

COVERAGE FIRE   AMOUNT 18568.84

SUPPLEMENTAL   YES

F.S   FIN

⑈1230⑈0003⑈ 0 67004 9⑈   ⑈000185884⑈