Argued and submitted September 2, reversed and remanded December 14, 1988,
reconsideration denied February 10, petition for review denied March 21, 1989
(307 Or 571)

CONTRACTORS, INCORPORATED,
*Appellant,*

*v.*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
*Respondent.*

(A8507-04423; CA A43454)

766 P2d 389

James N. Westwood, Portland, argued the cause for appellant. With him on the briefs were John R. Bakkensen and Miller, Nash, Wiener, Hager & Carlsen, Portland.

E. Andrew Jordan, Portland, argued the cause for respondent. With him on the brief were Arthur L. Tarlow, James J. Kirk and Bolliger, Hampton & Tarlow, Portland.

Before Warden, Presiding Judge, and Graber and Riggs, Judges.

GRABER, J.

## GRABER, J.

Defendant Tri-County Metropolitan Transportation District of Oregon (Tri-Met) is a municipal corporation subject to the Public Contract Law. ORS 279.310. Tri-Met awarded a contract to plaintiff Contractors, Incorporated (CI), for the construction of a bus garage. CI sued to recover five percent of the contract price held as "retainage" by Tri-Met, plus interest on that retainage.[1] *See, generally,* ORS 279.400 *et seq.* The case was tried to a jury. At the close of CI's case in chief, the trial court dismissed, or directed a verdict for Tri-Met on, each of CI's retainage and interest claims and entered judgment accordingly.[2] CI appeals, and we reverse and remand.

Because we are reviewing grants of motions for directed verdict and motions to dismiss, we state the facts in the light most favorable to CI. *See Brown v. J. C. Penney Co.,* 297 Or 695, 705, 688 P2d 811 (1984); *Brennen v. City of Eugene,* 285 Or 401, 405, 591 P2d 719 (1979). CI, as general contractor, began work on the garage in 1982. Tri-Met hired the architectural firm of Zimmer, Gunsul, Frasca (ZGF) to supervise the construction project on its behalf. On July 15, 1983, ZGF issued a certificate of substantial completion, which allowed Tri-Met to move in and to use the garage fully. Some minor construction work remained to be performed. ZGF compiled a "punch list" of that work and gave the punch list to CI.[3] CI began work on the punch list items and, on

---

[1] "Retainage" is a portion of the contract price withheld from a contractor to assure the public body that the contractor will satisfy all of its obligations, such as payment of subcontractors and completion of the job. *See* ORS 279.410. Here, CI deposited securities (such as U.S. Treasury bonds) in lieu of cash. *See* ORS 279.420(3)-(5). CI receives interest on the retainage from the bank where it is deposited, but Tri-Met controls the principal. For ease of reference, in this opinion we refer to the securities as retainage. The interest that CI seeks to recover is the difference between the rate being earned from the bank and the statutory rate of one and one-half percent per month, from the date that CI claims that Tri-Met should have released the retainage. *See* ORS 279.575(3).

[2] CI asserted many claims in its third amended complaint. The final judgment disposes of all claims, but only issues relating to the retainage and interest are assigned as errors on appeal.

[3] Examples from the punch list include:

"30. Replace loose tile at base of wing wall at west end of counter.

"* * * * *

"33. Correct chip on back side of mirror, upper left hand corner."

October 28, 1983, sent a letter to ZGF and Tri-Met requesting release of "all or a portion of our retension [sic]." On February 14, 1984, CI again wrote to ZGF and Tri-Met, repeating its request for release of the retainage. Tri-Met responded on March 2, 1984, stating that it would release the retainage only after CI (1) completed all remaining punch list items; (2) sent a second written notice of completion to ZGF; (3) completed "all contract close-out requirements;" and (4) "submit[ted] all claims and disputes (including all supporting documentation) to Tri-Met for settlement and release in final payment."[4]

On May 3, 1984, representatives of Tri-Met, ZGF, CI, and some of the project's subcontractors met. According to the testimony of CI's president, Singleton, Tri-Met's representative, Ford, agreed that Tri-Met would assign a "cost of completion" to the then remaining punch list items and would release all of the retainage except the cost of completion. On May 30, 1984, Ford wrote to CI, agreeing that the punch list compiled at the May 3 meeting was accurate but restating Tri-Met's earlier position that the retainage would not be released until "all work [was] completed in accordance with the contract documents." Singleton testified that the May 30 letter contradicted the agreement that the parties had reached at the May 3 meeting.

By December, 1984, all construction work, including the punch list items, was complete. On April 5, 1985, Tri-Met wrote to CI that it would release the retainage on receipt of an affidavit and consent of surety. Included with that letter were drafts of an affidavit and consent forms. The affidavit provided, in part:

"2. That pursuant to Paragraph 4.24(e)2 of the Contract, all payrolls, bills for materials and equipment, and other indebtedness, including subcontractors, connected with the work for which Tri-Met or its property might in any way be responsible, have been paid or otherwise satisfied. *Upon final payment, in consideration of Tri-Met's promise to release Contractors, Inc. from all contract-related claims other than warranty claims, Contractor releases Tri-Met from all claims related to the Contract.*" (Emphasis supplied.)

---

[4] Before that letter was sent, CI had informed Tri-Met that it would file claims to recover increased expenditures and the costs of delay allegedly caused by Tri-Met.

Neither the contract nor any statute conditions release of the retainage or Tri-Met's final payment to CI on CI's releasing its claims against Tri-Met. CI argues that the release request and other correspondence among Tri-Met, ZGF, and CI show a bad faith effort by Tri-Met to use the retainage as bargaining leverage to induce CI to release its claims against Tri-Met. CI refused to release its claims against Tri-Met; Tri-Met refused to release the retainage; this litigation followed.

CI's several assignments of error raise two basic issues: (1) Must Tri-Met release the retainage? (2) Regardless of the answer to the first question, must Tri-Met pay interest on the retainage under ORS 279.575(3)? The parties disagree about how ORS 279.575(3) affects those issues; therefore, we first address the meaning of that statute.

ORS 279.575(3) provides:

> "The retainage held by a public contracting agency shall be included in and paid to the contractor as part of the final payment of the contract price. The public contracting agency shall pay to the contractor interest at the rate of one and one-half percent per month on the final payment due the contractor, interest to commence 30 days after the work under the contract has been completed and accepted and to run until the date when the final payment is tendered to the contractor. The contractor shall notify the public contracting agency in writing when the contractor considers the work complete and the public contracting agency shall, within 15 days after receiving the written notice, either accept the work or notify the contractor of work yet to be performed on the contract. If the public contracting agency does not within the time allowed notify the contractor of work yet to be performed to fulfill contractual obligations, the interest provided by this subsection shall commence to run 30 days after the end of the 15-day period."

CI contends that, under the statute, a public agency that fails to respond within 15 days to a written notice from a contractor that the contractor considers its work complete must, 30 days after the 15-day period expires, release the retainage. If the agency does not release the retainage after the 45 days, then the one-and-one-half percent per month interest begins to accrue. Because Tri-Met did not respond within 15 days to its written notice, CI asserts, both the retainage and the interest are due.

Tri-Met argues that the statute does not apply. It reasons that the statute depends on the terms "completion" and "acceptance," that the contract alone—not the statute—defines those terms, and that, because CI has not "completed" the *contract*[5] and Tri-Met has not "accepted" CI's performance, Tri-Met owes neither the retainage nor the interest.

Each party is partly correct in its reading of the statute. We agree with Tri-Met that release of the retainage is governed by the terms of the parties' contract. The statute provides that retainage is "part of the final payment" of the contract price. ORS 279.575(3). The contract governs when, and under what conditions, the final contract payment is due.

The second sentence of the statute provides that, if "the work under the contract" is completed and accepted but the public agency fails to make the final payment (including the retainage) within 30 days, then interest on the entire final payment begins to accrue. Thus, the second sentence applies when the parties *agree* that the the final payment is due but, for some reason, it is delayed.

The third and fourth sentences apply when, as here, the parties *disagree* about whether the final payment is due. In that situation, the contractor may notify the public agency in writing that the contractor considers the work complete.[6] On receipt of that notice, the public agency may either accept the work or notify the contractor of work yet to be done. If the public agency fails to do either within 15 days, then 30 days after the 15-day period ends, interest on the entire final payment (including the retainage) begins to accrue. Thus, the third and fourth sentences of the statute affect only *interest* on the final payment and, thus, on the retainage, but not *release* of the retainage itself.

We turn to the merits. CI claims entitlement to the

---

[5] Tri-Met agrees that CI has completed the *construction work. See* n 6, *infra*.

[6] In the light of our disposition, we need not decide whether "the work under the contract" in the statute's second sentence and "the work" in the third sentence mean the same thing.

retainage under both the contract and ORS 279.575(3).[7] As explained above, the statute leaves that issue to the contract. Accordingly, we address only CI's theory that the contract required Tri-Met to release the retainage.

■ The trial court both dismissed CI's claim for failure to state a claim, ORCP 21A(8), and directed a verdict for Tri-Met on it. Both motions were made and ruled on at the close of CI's case in chief. Because the motion to dismiss was made at trial, we judge the sufficiency of the complaint by the evidence introduced, not by the allegations in the complaint. *Richards v. Dahl,* 289 Or 747, 753, 618 P2d 418 (1980). CI argues that our review of the two motions is governed by the same standard: Viewed in the light most favorable to CI, is there any evidence from which a reasonable jury could find that CI complied with all the contract's provisions? *See, e.g., Franklin v. Safeco Ins. Co. of America,* 303 Or 376, 378, 737 P2d 1231 (1987); *James v. Carnation Co.,* 278 Or 65, 69, 562 P2d 1192 (1977). We agree that *in this case*[8] CI's argument is well taken, and we review both motions together under that standard.

■ Tri-Met argues that there was no evidence that CI complied with numerous contractual conditions precedent to final payment ("close-out provisions").[9] We disagree. There was evidence from which a reasonable jury could conclude that

[7] Tri-Met asserts that CI's third amended complaint is inadequate in that it does not request release of the retainage in the prayer. Omission of that request is not fatal, however, because the body of the complaint clearly seeks release of the retainage and sets forth the facts necessary to support that claim. *See Davis v. Surcamp,* 86 Or App 310, 313, 738 P2d 1006 (1987); *Employers' Fire Ins. v. Love It Ice Cream,* 64 Or App 784, 792, 670 P2d 160 (1983).

We reject without discussion Tri-Met's arguments regarding the nature of the relief requested.

[8] Whether a complaint states a claim is a question of law for the court. Whether a directed verdict is proper is a question that is answered from the *perspective* of a reasonable jury, although it, too, is decided by the court. The two analyses may not always be the same, even when the motions are made simultaneously, as here.

[9] At trial, Tri-Met based its directed verdict motion on CI's alleged noncompliance with two provisions of the contract. On appeal, it also argues that CI failed to comply with numerous additional provisions. There is evidence that CI complied with all of the close-out provisions, so we need not decide whether we can address those arguments that Tri-Met makes for the first time on appeal. *Compare Inman et al. v. Ollson et al.,* 213 Or 56, 61, 321 P2d 1043 (1958) (review limited to specific grounds relied upon below as reasons in support of nonsuit) *with Bevan v. Garrett,* 284 Or 293, 299, 586 P2d 1119 (1978) (when trial judge reaches correct result, appellate court can affirm on grounds not raised at trial).

the close-out provisions had been met. CI's president, Singleton, testified that "all close-out provisions of the contract had been complied with."[10] His testimony was sufficient to present a jury issue, notwithstanding the substantial contrary evidence in this lengthy record.

Tri-Met also argues that the dismissal and directed verdict were proper, because there was no evidence that Tri-Met accepted CI's performance. According to Tri-Met, paragraph 4.24(e)1 makes its acceptance a condition precedent to final payment. That paragraph provides:

"(e) *Final Completion and Final Payment*

"1. Upon receipt of Contractor's notice that the work is ready for final inspection and acceptance and upon receipt of a final invoice, Tri-Met will make inspection, and, when Tri-Met finds the work acceptable under the Contract Documents and the Contract fully performed, Tri-Met will pay Contractor."

 That paragraph allows Tri-Met to inspect before paying; if Tri-Met finds the work acceptable and the contract fully performed, it "will pay." Of course, Tri-Met must act in good faith and cannot unreasonably withhold acceptance. *See Western Hills v. Pfau,* 265 Or 137, 143, 508 P2d 201 (1973). Here, ZGF inspected on Tri-Met's behalf. Thereafter, ZGF, Tri-Met, and CI all agreed that the only remaining work that was not acceptable was the punch list. There was evidence

---

[10] Singleton testified:

"Q [BY TRI-MET'S ATTORNEY] Now, I am talking about whether the project was complete, which means that all billings are submitted, all punch list work is completed, and the close-out provisions of the contract are complied with. I am asking you, sir, if that's your definition of 'complete.'

"A I wrote the architect and told him we were complete. * * *

"I felt the project was complete. I didn't feel our request for retention was out of line and that's the way I feel now.

"* * * * *

"Q [At a deposition of Singleton taken by Tri-Met attorneys on November 18, 1986] I will ask you whether you gave this answer to [this] question * * *:

" '[Q] But that's what you mean when you say complete, isn't it? All the bills had been submitted, punch list work had been completed, and the close-out provisions of the contract had been complied with?

" 'A Yes.'

"A Yes, I believe we had complied with the provisions of the contract. I still do."

from which a jury could find that the punch list work was subsequently completed and accepted.[11] Thus, both the dismissal for failure to state a claim and the directed verdict on CI's contract compliance theory were erroneous.

CI's contract compliance theory was stated in Count One of Claim 17. In Count Two of that claim, CI asserted a theory of waiver. CI alleged that Tri-Met waived certain conditions of the contract, that CI complied with the remaining conditions and, therefore, that CI was entitled to final payment. The trial court disposed of Count Two the same way that it disposed of Count One: It both dismissed for failure to state a claim and directed a verdict in favor of Tri-Met.

On appeal, Tri-Met urges us not to reach the waiver theory, because its dismissal was assigned as error only in the reply brief.[12] *See* ORAP 7.19(5). CI asks us to address the issue on the basis that Tri-Met suffered neither prejudice nor surprise. We consider the issue on its merits, but for a different reason. Dismissal of the waiver claim was raised in CI's second assignment, in which it claimed that the trial court erred in making this ruling:

"[TRI-MET'S ATTORNEY]: We will move for a dismissal of the same items under Rule 21(a)(8), that it fails to state a claim for relief.

"* * * * *

"[CI'S ATTORNEY]: Well, Your Honor, it doesn't fail to state a claim for relief because it realleges 89 through 94 and, in that, we ask for interest for retention wrongfully withheld.

"THE COURT: The motion is allowed."

From the context of the parties' earlier colloquy, it is clear that the "same items" referred to in the motion are Counts One *and* Two of Claim 17. Moreover, when CI's attorney argued that "it realleges [paragraphs] 89 through 94," he *had* to be referring to Count Two, because that is the *only* place where those paragraphs are realleged. We move, then, to the waiver theory.

---

[11] The quoted paragraph also requires that the contract "be fully performed." As discussed above, there was evidence from which a jury could find that the contract had been fully performed.

[12] The directed verdict was assigned as error in CI's opening brief.

■ A party may waive the occurrence of any condition in a contract that is for its sole benefit. *Wallstreet Properties v. Gassner,* 53 Or App 650, 660, 632 P2d 1310 (1981). A waiver is a voluntary relinquishment of a known right, accomplished by a manifestation of willingness by a party that its duty to perform shall no longer be dependent on the occurrence of the condition. 53 Or App at 661; *see also Restatement of Contracts,* § 297, 439-41 (1932).

Once again, there was evidence, in the form of testimony by Singleton, that at the May 3, 1984, meeting, Tri-Met had agreed to release the retainage as soon as CI completed the punch list items.[13] His testimony is enough, despite much evidence to the contrary, to create a jury issue. Thus, dismissal of and the directed verdict on CI's waiver theory were error.

■ Finally, we consider the claim for interest. In both counts of Claim 17, CI sought interest pursuant to ORS 279.575(3).[14] The trial court directed a verdict on the interest claim separately from the directed verdicts on the claim for release of the retainage. Tri-Met argues that the statute requires final completion of all contract terms by CI, and acceptance by Tri-Met, before the statutory interest provision

---

[13] Singleton testified:

"Q [BY CI'S ATTORNEY] Okay; what did [the Tri-Met representative] tell you?

"A That I had to get the punch list work completed.

"Q Then what was going to happen?

"A Then he would release the retension [*sic*].

"Q Did he say anything to you at that time about the necessity of submitting affidavits or anything like that?

"A No."

[14] The third amended complaint refers to "ORS 279.575(3)" on page 20, line 11, and to "ORS 279.575(4)" on page 20, line 13, when it should refer to subsection (4) on line 11 and subsection (3) on line 13. Both citations are in a single paragraph. CI moved to amend the complaint at trial in order to correct the transposition. The trial court denied the motion. Tri-Met argues that the trial court did not abuse its discretion in denying leave to amend and that we cannot reach the substance of CI's arguments about its entitlement to interest, because CI did not assign the denial of its motion to amend as error on appeal.

Neither argument is well taken. The complaint adequately cited the statute, the parties' arguments on the merits focused on the appropriate subsections, and Tri-Met can claim neither surprise nor prejudice. *Compare Nichols v. Union Pacific R.R. Co.,* 196 Or 488, 503, 250 P2d 379 (1952). To accept Tri-Met's argument would be to exalt form over substance, which we decline to do (this time). No amendment to the complaint was necessary.

is activated. As explained above, the statute requires neither completion nor acceptance, where the parties disagree on those issues, for the interest provision to apply. There was evidence from which a reasonable jury could find that CI notified Tri-Met in writing that CI considered the work complete and that Tri-Met did not respond within the statutory time limits. Accordingly, the directed verdict was error.

Reversed and remanded.