Argued and submitted November 27, 1989, judgment modified to reduce interest on costs and attorney fees awarded to nine percent; affirmed as modified March 28, 1990

# P & C CONSTRUCTION CO.,
*Respondent,*

*v.*

# AMERICAN DIVERSIFIED/ WELLS PARK II et al,
*Appellants,*

*and*

# PRINCETON PORTLAND INVESTORS, LTD., et al,
*Respondents.*

## (A8708-04908; CA A51058)
789 P2d 688

Rick T. Haselton, Portland, argued the cause for appellants. With him on the briefs were David T. Douthwaite, and Lindsay, Hart, Neil & Weigler, Portland.

E. Andrew Jordan, Portland, argued the cause for respondent P & C Construction Co. With him on the brief were Arthur L. Tarlow, and Bolliger, Hampton & Tarlow, Portland.

No appearance for respondents Princeton Portland Investors, Ltd., and The Princeton Group, Inc.

Before Joseph, Chief Judge, and Riggs and Edmonds, Judges.

**JOSEPH, C. J.**

This is an action for breach of contract and to foreclose a construction lien for labor performed and material supplied by plaintiff in the renovation of the Wells Building in Portland. Defendants American Diversified Capital Corporation, American Diversified/Wells Park II and ADC Financial Corporation (defendants)[1] appeal the lien foreclosure judgment, raising two claims: (1) The judgment should be reduced by $130,087 because of a lien release signed by plaintiff; and (2) they should not be bound to pay pre- and post-judgment interest at the rate of 12 percent stated in the construction contract, because they were not parties to that contract. We review *de novo*. ORS 19.125(3); *McClory v. Gay*, 45 Or App 561, 563, 608 P2d 1213 (1980).

In July, 1985, Princeton Portland Investors, Ltd.,[2] contracted with plaintiff to act as general contractor for the renovation of the Wells Building. Princeton was the owner of the building when the contract was executed. The building was later sold to defendant American Diversified/Wells Park II. Defendants then collectively became the owner and the financing institution for the project under an agreement with Princeton.

Plaintiff's contract with Princeton provided for a guaranteed maximum cost for the project and a 7 percent contractor's fee. It was also to receive 25 percent of any cost savings as additional compensation. Plaintiff was to submit applications for payment[3] at the beginning of every month for the costs incurred during the previous month. If approved by the architect, a draw request was to be paid within ten days after the delivery of the request. The contract also provided that unpaid amounts would bear interest at the annual rate of 12 percent. The contract did not specify a particular method or order for applying payments. Although not required by the

---

[1] Defendants are affiliates of American Diversified Savings Bank, a federally chartered savings and loan institution, now in federal receivership.

[2] The Princeton Group, Inc., is Princeton Portland Investors, Ltd.'s general partner, and both are named defendants in the underlying contract action. Although named as respondents on appeal, they have not appeared. They are referred to collectively as Princeton in this opinion.

[3] We will refer to the applications as draw requests.

contract, plaintiff also had to sign lien releases as a condition of being paid.

Construction began on the project sometime after April, 1985. Initially, defendants made payments on draw requests to Princeton, which, in turn, would pay plaintiff. In April, 1986, defendants began making payments directly to plaintiff. However, plaintiff continued to treat Princeton as responsible for payment, and it continued to work with Princeton on the development and construction of the building, as well as with defendants. Defendants ordered changes in the work, met frequently with Princeton and plaintiff and, eventually, became active in the day-to-day activities of the project.

In July, 1986, plaintiff submitted Draw Request No. 14 for work completed through June 30, 1986. The amount of the request was $308,429. On August 22, 1986, defendants paid $178,342, which left $130,087 as the unpaid balance on that request. On October 10, 1986, plaintiff executed a lien release[4] that said that it had been paid in full for all labor performed and for all materials furnished on the project as of June 30, 1986. Between July 1, 1986, when the June draw request was submitted, and October 10, 1986, when the release was signed, other draw requests had been submitted and additional payments had been made. Consequently, when the lien release was signed, plaintiff had received, in total, more money than it had billed and was unpaid as of June 30, 1986.

After completion of the project in 1987, plaintiff believed that it was owed $592,786 under the contract, plus the cost saving allowance. It sued Princeton for breach of contract for the outstanding balance and sought to foreclose its lien, seeking a judgment in the same amount, plus various costs and

---

[4] The release provides, in relevant part:

"KNOW ALL MEN BY THESE PRESENTS, that the undersigned, P & C Construction Co. on the Wells project, located at Portland, Oregon, * * * upon receipt of $117,571, hereby waives, releases any and all claims of lien and right of lien, which he [sic] may now have or have in the future, in regard to the above described project up to and including 9/30/86.

"In addition the undersigned hereby certifies that he [sic] has been paid in full for all labor performed and for all materials transported or furnished on the above described project as of 6/30/86, except balance of retention."

attorney fees, with pre- and post-judgment interest at 12 percent *per annum.* Judgment was entered against Princeton on the breach of contract claim in the amount of $570,367,[5] with 12 percent pre- and post-judgment interest, and against defendants on the lien foreclosure claim in the same amount, plus attorney fees and costs, with 12 percent interest.[6]

Defendants' first assignment of error is that the lien foreclosure judgment improperly included $130,087 for work covered by the October lien release. Defendants argue that, because the release is unambiguous,[7] we must hold that it encompassed lien rights arising from all work performed through June 30, and billed before October 10, whether a particular draw request had been fully paid or not. Defendants contend that, because payments were applied to the request most recently received and approved and because, when plaintiff signed the release, there was an outstanding balance owing on Draw Request No. 14, plaintiff released its lien rights as to that outstanding amount by signing the release. Defendants further argue that, because the language of the release is clear, no evidence should have been admitted to explain plaintiff's intent.

Plaintiff claims that the language of the release is ambiguous, because it does not state how "paid in full" was to be calculated. It says that payments were applied on a cumulative basis, not just to the last request received, so that money paid was applied first to any outstanding balances on earlier requests. It also argues that, because a waiver must be a voluntary and intentional relinquishment of a known right, evidence of what it intended to release was relevant and admissible. *See Daly v. Fitch,* 70 Or App 18, 687 P2d 1124 (1984); *Harris v. Dyer,* 50 Or App 223, 623 P2d 662, *mod on other basis* 292 Or 233, 637 P2d 918 (1981).

A contract provision is unambiguous if the language

---

[5] Plaintiff's claim was reduced from $592,786 to $570,367 after various adjustments were made between the parties.

[6] Defendants appeal from an amended judgment entered on January 4, 1989, which added $12,607 as the "cost savings" recovery that was inadvertently omitted from the original judgment.

[7] *See Northwest Wholesale Stationers v. McCormack,* 96 Or App 299, 772 P2d 1360 (1989); *Deerfield Commodities v. Nerco, Inc.,* 72 Or App 305, 696 P2d 1096, *rev den* 299 Or 314 (1985).

is "so clear as to preclude doubt by a reasonable person," but it is ambiguous if the language is "capable of more than one sensible and reasonable interpretation." *Deerfield Commodities v. Nerco, Inc., supra* n 7, 72 Or App at 317. Moreover, a lien waiver must be "reasonably clear" about what rights the supplier of materials or labor intended to waive. *Nelson v. Cohen,* 160 Or 336, 338, 84 P2d 658 (1938). To determine whether a contract is ambiguous, evidence about the surrounding circumstances is admissible to put the judge in the position of the parties to the contract. *Deerfield Commodities v. Nerco, Inc., supra.*

■ The construction contract required that plaintiff submit monthly draw requests. The contract also established a guaranteed maximum cost, necessitating that each request be viewed in relation to the anticipated maximum project cost. As the financer, defendants' focus would tend to be on each request. Each request showed how much had been billed to date and what was being billed that month, while payment checks contained a reference to a particular draw request, whether or not the payment equalled the amount billed. The meaning of the release, therefore, could depend on how the parties thought that payments would be applied and on a resolution of any differences in their views. The release does not state clearly what lien rights it was meant to release or that it was releasing any lien for unpaid draw requests.

We conclude that the release was ambiguous, because it was capable of more than one sensible and reasonable interpretation and the words are not clear as to its application. Because it is ambiguous, we determine the scope and effect of the release from the "language of the document, the sequence of events and the surrounding circumstances." *Portland Elec. & Plum. v. Simpson,* 59 Or App 486, 490, 651 P2d 172 (1982), *rev den* 294 Or 682 (1983). In doing that, and thereby giving one party's meaning effect against the other's, we are doing what Professor Corbin described:

> "[O]ne of [contract law's] chief purposes is to secure the realization of expectations reasonably induced by the expressions of agreement, when that can be done without running counter to other expectations also reasonably induced." 3 Corbin, *Corbin on Contracts,* § 537, 45 (1960).

■ Defendants claim that, because vouchers attached to each payment check related to a specific draw request, plaintiff knew that that payment should be applied only to that

request. They also point to a letter written by plaintiff's vice president to Princeton, after the October release was signed, concerning money owed plaintiff under the contract. Because the draw requests and the payments were segregated in that letter to show how much was still owed on each request, defendants contend that plaintiff, in fact, used an accounting method that related payments received to the last request. Defendants also claim that another lien release, executed by plaintiff in February, 1987, stating that it had been paid in full only through May 30, 1986, proves that plaintiff had seen the October release as its mistake and was attempting to rescind that release. However, no evidence was submitted about why the February release contained the May date.

Plaintiff argues that the language of the release does not distinguish between cumulative payments or individual draw requests. In fact, it argues, because the release refers to "all labor performed and * * * all materials furnished," it refers to all payments made on the project. Therefore, signing the waiver could not have affected plaintiff's interests, because, by October 10, it had cumulatively been paid more than it was owed *as of June 30*. It also claims that the check vouchers mean nothing, because, in most instances, the payment amount had no relation to what had been stated as due in a particular draw request.

Plaintiff points out that no evidence was submitted that would show any reason why an experienced business would forego $130,000 to which it was entitled for nothing in return. It argues that the evidence shows that it applied payments on a cumulative basis; therefore, it never intended to waive any rights to any unpaid amounts. Defendants provided no other evidence indicating that plaintiff knowingly released its rights. Under the circumstances of the release's execution, we conclude that plaintiff only waived its lien rights as to labor and material billed and *paid for* as of June 30.[8]

---

[8] The same question was decided in *Portland Elec. & Plum. v. Simpson, supra,* where the release was included on the backs of checks made out jointly to the contractor and subcontractor. The trial court held that, even though the payment in issue was only in the amount of the previous month's billing, the release included materials supplied after the billing date but not yet paid. We determined that, before a supplier can be held to have released its lien rights for all unpaid costs, the language of the release must tell the contractor what it is releasing. The language involved was broad and all encompassing and did not sufficiently express what lien rights were being released. The lien release here lacks the clarity required by *Portland Elec. & Plum.* and, therefore, cannot be read as broadly as defendants would have us read it. *See* 59 Or App at 489-490.

Defendants' second assignment is that the lien foreclosure judgment should be subject to the 9 percent statutory interest rate, ORS 82.010,[9] not the 12 percent contractual interest rate. The trial court did not state its reason for using the latter rate. Defendants contend that there are only two bases on which it could have awarded 12 percent interest: (1) The construction contract between Princeton and plaintiff provided that payments due and unpaid would bear interest at 12 percent from the date payment was due; and (2) ORS 701.420(2), a statute specifically concerning construction contracts, provides for a 1 percent per month interest rate on the final payment due a contractor or subcontractor.

■   Defendants claim that, because they are not in privity of contract with plaintiff, they should not be bound to the contractual interest rate.[10] They also argue that, because they never entered into an agreement with plaintiff, they are not an "owner" as defined in ORS 701.410(3).[11] Plaintiff contends that the contract interest rate is part of the lien, regardless of whether privity exists between the owner and the contractor. It relies on *Alley v. Erbach,* 89 Or App 5, 747 P2d 360 (1987), for that proposition. It also cites *The Victorian Number Two,* 26 Or 194, 41 P 1103 (1894), which held that the contract interest rate between a subcontractor and the contractor was properly included in the lien judgment against the property owner. Plaintiff also contends that, if any statutory rate governs, it must be the 1 percent per month rate in ORS 701.420(2), because that statute sets a specific rate for construction contracts that controls over the general statutory interest rate. *See Davis v. Wasco IED,* 286 Or 261, 593 P2d 1152 (1979).

Defendants do not argue that interest cannot be

---

[9] ORS 82.010 provides, in part:

"(1)  The rate of interest for the following transactions, if the parties have not otherwise agreed to a rate of interest, is nine percent per annum and is payable on:

"(a)  All moneys after they become due * * *."

[10] Plaintiff's assertion that defendants failed to preserve this issue at trial is wrong.

[11] ORS 701.410(3) provides:

" 'Owner' includes a person who is or claims to be the owner in fee or a lesser estate of the land, building, structure, or superstructure on which construction is performed and *who enters into an agreement with a contractor for the construction.*" (Emphasis supplied.)

included in the lien judgment; neither do they argue that a contractual interest rate can never be included in a lien judgment. Their argument is that, in this case, because they were not parties to the contract between Princeton and plaintiff as the "owner," they are not bound to pay the interest rate agreed to by those parties.

Under the Construction Lien Law,[12] plaintiff was the "original contractor" and Princeton was the "owner" when the contract was executed. ORS 87.005(7) and (8).[13] Sometime later, when American Diversified/Wells Park II purchased the property, the purchase was subject to the development agreement between defendants and Princeton. After that purchase, Princeton was considered the project construction manager and was responsible for supervising plaintiff in accordance with the construction contract. For acting in that role, Princeton received compensation from defendants. The contract was attached to the development agreement, and it was agreed that that contract could not be amended without defendants' permission. Although most directions to plaintiff came from Princeton, defendants directly dealt with plaintiff at times after disagreements developed as to who was responsible to pay for certain work changes.

After the project was sold, Princeton effectively became the agent of defendants. ORS 87.005(3);[14] *see Steel Products v. Port. Gen. Elec. Co.,* 47 Or App 597, 604, 615 P2d 344 (1980), *aff'd* 291 Or 41, 628 P2d 1180 (1981). However, plaintiff did not lose its status as an original contractor merely because the project was sold. *See Sam Paulsen Masonry v. Higley,* 276 Or 1071, 1075, 557 P2d 676 (1976). Plaintiff's lien

---

[12] ORS 87.001 to ORS 87.093.

[13] ORS 87.005(7) provides:

" 'Original contractor' means a contractor who has a contractual relationship with the owner."

ORS 87.005(8) provides, in relevant part:

" 'Owner' means:

"(a) A person who is or claims to be the owner in fee or a lesser estate of land on which preparation or construction is performed * * *."

[14] ORS 87.005(3) provides:

" 'Construction agent' includes a contractor, architect, builder, or *other person having charge of construction or preparation.*" (Emphasis supplied.)

rights still arose from the contract with Princeton. Defendants do not challenge the judgment with respect to other compensation paid plaintiff, as agreed to in the contract, such as the cost savings allowance. We see no reason to parse out from the judgment the contract interest rate on the basis of a lack of privity when the entire judgment, excluding costs and attorney fees, must be based on the contract. We conclude that the contract between plaintiff and Princeton controls the lien amount, including the rate of interest.

The reasoning in *Alley v. Erbach, supra,* is instructive. Two rental equipment suppliers, Alley and Haggerty, rented equipment to a subcontractor of the contractor, who was in charge of repairing a spillway on the owner's property. When they were not paid by the subcontractor, they filed liens against the property. The owner appealed from the foreclosure judgment on the basis that the interest charges imposed by the suppliers were improperly included as rent. We held that, with respect to Alley's claim, the interest charge was properly included as rent, because that interest was part of the agreement with the subcontractor, which involved the property subject to the lien and gave rise to the lien in the first place. 89 Or App at 9. However, we held that the interest rate sought by Haggerty could not be part of the lien, because that rate was established in a separate agreement, not involving the owner or the property and not a part of the rental agreement. 89 Or App at 9. The underlying premise, which we adopt here, is that the contract for the construction is the controlling document for determining the extent of the lien, if it speaks to the interest rate, which the one here does.

■ Even if the contract interest rate applies to pre- and post-judgment interest on the principal amount, it cannot apply to post-judgment interest on costs and attorney fees. ORS 82.010(d). It was error for the trial court to apply it.

Judgment modified to reduce interest on costs and attorney fees awarded to nine percent; affirmed as modified.