Argued and submitted October 30, 1995, affirmed January 3, 1996

In the Matter of the Compensation of
Jeffrey B. Trevitts, Claimant.

Jeffrey B. TREVITTS,
*Petitioner,*

*v.*

HOFFMAN-MARMOLEJO,
a joint venture of
Hoffman Construction of Oregon
and Marmolejo Contractors, Inc.,
*Respondent.*

(92-13272; CA A85590)

909 P2d 187

James S. Coon argued the cause for petitioner. With him on the opening brief was Royce, Swanson, Thomas & Coon. With him on the supplemental and answering briefs was Swanson, Thomas & Coon.

Janet M. Schroer argued the cause for respondent. With her on the briefs were Eli D. Stutsman, Brian M. Perko and Hoffman, Hart & Wagner.

Vera Langer and Scheminske, Lyons & Bussman filed an *amici curiae* brief for Hoffman Construction of Oregon and Continental Loss Adjusting Service.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

Claimant seeks review of an order of the Workers' Compensation Board that affirmed the referee's holding that a claim disposition agreement (CDA) entered into pursuant to ORS 656.236[1] barred claimant from recovering all nonmedical benefits on his claim. We review for errors of law and substantial evidence, ORS 656.298(6), ORS 183.482(7), (8), and affirm.

On August 15, 1989, claimant sustained a compensable, disabling low back injury that was accepted on September 14, 1989. After x-rays revealed a lumbar disc protrusion, claimant's attending surgeon, Brett, performed an L4-5 diskectomy on November 29, 1989. In July 1990, an MRI detected a small herniation at the L5-S1 level and showed a distortion of the left S1 nerve root. Brett believed that claimant was suffering a pathological worsening related to the compensable injury. Nonetheless, on September 12, 1990, · Brett concluded that claimant was medically stationary with moderate permanent disability, subject to certain restrictions for repetitive lifting, bending, stooping, sitting and standing.

Claimant began to negotiate a settlement with employer and, in February 1991, sent a letter to confirm his offer for an "immediate CDA (no time loss, vocational assistance, permanent disability, etc.)" in exchange for $30,000. In April 1991, the parties agreed to a CDA for $25,000. Claimant's attorney then drafted a notice of rights, signed by employer, that stated:

---

[1] ORS 656.236 (1993) provided, in part:

"(1)   The parties to a claim, by agreement, may make such disposition of any or all matters regarding a claim, except for medical services, as the parties consider reasonable, subject to such terms and conditions as the director may prescribe."

That statute has been amended by Oregon Laws 1995, chapter 332, section 24, to read, in part:

"(1)(a)   The parties to a claim, by agreement, may make such disposition of any or all matters regarding a claim, except for medical services, as the parties consider reasonable, subject to such terms and conditions as the Workers' Compensation Board may prescribe. For the purposes of this section, 'matters regarding a claim' includes the disposition of a beneficiary's independent claim for compensation under this chapter. Unless otherwise specified, a disposition resolves all matters and all rights to compensation, attorney fees and penalties potentially arising out of claims, except medical services, regardless of the conditions stated in the agreement."

"In return for the agreed upon amount of money, [claimant] will give up or 'release' [his] right to:

"(1)  Claim closure and disability rating
"(2)  An award for permanent partial disability
"(3)  Monthly payments for permanent total disability
"(4)  Vocational assistance
"(5)  Future time loss benefits[.]"

The notice further stated that "the only benefit [claimant] will *not* release is [his] right to medical benefits for the accepted condition." (Emphasis in original.) Claimant then sent a letter to employer to confirm continuation of time loss payments until the Board approved the CDA, to state that those payments would not be subject to offset and to affirm that claimant would be withdrawing his request for a hearing on the rating of his disability.

The Board approved the CDA on May 21, 1991. The CDA listed the claim number and the date pertaining to the August 1989 injury claim and provided that:

"The accepted conditions subject to this claim disposition agreement are: lumbar strain/sprain, and L4-5 disk protrusion.

"* * * * *

"The above-captioned claim is in accepted status, and the insurer has paid the claimant all benefits due and payable up to the date this agreement was sent to him.

"Pursuant to ORS 656.236, in consideration of the payment of $25,000.00 by the insurer, claimant releases his right to the following workers' compensation benefits: temporary disability, permanent disability, vocational rehabilitation and survivor's benefits, and all other benefits except for medical services. The insurer's obligation to provide these benefits is also released.

"* * * * *

"Claimant retains his right to medical services for the compensable injury."

On December 4, 1991, employer authorized Brett to perform surgery on claimant at the L5-S1 level, and subsequently paid claimant's medical costs. Employer also paid claimant's medical bills for a subsequent L5-S1 surgery. On

August 24, 1992, claimant sought temporary total disability benefits related to the L5-S1 surgery. Employer refused to pay, on the ground that the CDA had released it from its obligation to pay any benefits on the claim, except medical services. Claimant filed a request for hearing on October 13, 1992.

The referee upheld employer's denial, on the ground that under the CDA claimant had unambiguously "waived and released entitlement to any and all further compensation and benefits, solely excepting medical benefits." The Board, sitting *en banc* with one member dissenting, affirmed the referee's ruling but acknowledged that the CDA was ambiguous.

Claimant assigns error to the Board's ruling that the CDA barred him from recovering "any non-medical compensation for his L5-S1 condition where the [CDA signed by claimant] expressly covered only his lumbar sprain/strain and L4-5 disc protrusion." He argues that the CDA unambiguously covers only those two conditions and that, consequently, he is entitled to judgment as a matter of law. Employer responds that the CDA unambiguously settles the entire claim arising from the August 1989 injury. In the alternative, employer argues that if the CDA is ambiguous, extrinsic evidence in the record supports the Board's conclusion that the settlement bars claimant from recovering non-medical compensation for the L5-S1 condition.

█ We interpret the terms of a written agreement to settle a workers' compensation claim using the standard rules of contract construction. *See Good Samaritan Hospital v. Stoddard*, 126 Or App 69, 867 P2d 543, *rev den* 319 Or 572 (1994) (applying law of contracts to workers' compensation settlement agreement). The construction of a contract, including the question of whether it is ambiguous, is a question of law for the court. *Timberline Equipment v. St. Paul Fire & Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978); *Slocum v. Lang*, 132 Or App 571, 576, 889 P2d 379 (1995). A contract is unambiguous if the language is so clear that it precludes doubt by a reasonable person; it is ambiguous if there is more than one sensible and reasonable interpretation. *P & C Construction Co. v. American Diversified*, 101 Or App 51, 56, 789 P2d 688 (1990). We must pursue the intent of

the parties, if possible. ORS 42.240. If language in the contract is ambiguous, extrinsic evidence is admissible to show what the parties intended, and their intention is a question of fact. ORS 41.740; *Timberline Equipment*, 281 Or at 643; *Paragano v. Gray*, 126 Or App 670, 682, 870 P2d 837 (1994).

■　The CDA states that the "accepted conditions subject to this [CDA]" are the lumbar sprain/strain and the L4-5 disc protrusion. It does not mention the L5-S1 disc herniation. Nevertheless, it fully releases claimant's rights to all benefits, except for medical services. Moreover, by its terms, the only benefits claimant retains are to "medical services for the compensable injury." The retention clause makes no mention of nonmedical benefits related to the L5-S1 disc herniation and specifically addresses the compensable *injury* rather than any identified *conditions*. We agree with the Board that the language of the agreement raises "a question concerning the intention of the parties," and conclude that the CDA is ambiguous.

■　Accordingly, we turn to the Board's finding that, at the time the CDA was executed, the parties intended that claimant would retain his right only to medical services with respect to the claim. That finding is based on the following evidence. Claimant's February 1991 letter offered "an immediate CDA (no more time loss, vocational assistance, permanent disability, etc.)" and did not indicate an intention to retain any nonmedical benefits for any portion of the claim. The April 1991 notice of rights advised claimant that he was releasing his rights to claim closure and disability rating, permanent partial disability payments, permanent total disability payments, vocational assistance and future time loss benefits. The notice did not state that claimant would retain any nonmedical benefits for any portion of the claim. The April 1991 letter from claimant's attorney suggested that claimant would dismiss his hearing request regarding the disputed calculation of his temporary disability rating in exchange for both the continuation of temporary disability pending Board approval of the CDA and the assurance that those temporary payments would not be offset against the CDA proceeds. Finally, the summary page that was attached to the CDA when it was sent to the Board for approval provides that the CDA was a "full release." Substantial

evidence supports the Board's finding that the parties intended a full release of all benefits, except for medical services, related to the August 15, 1989 injury.

In the light of this disposition, we need not address claimant's other arguments nor employer's cross-assignment of error.

Affirmed.