Argued and submitted December 13, 1996, affirmed March 19, 1997

MORSE BROS., INC.,
an Oregon corporation,
*Respondent,*

*v.*

KEMP CONSTRUCTION, INC.,
an Oregon corporation,
*Defendant,*

*and*

Louis J. FASANO
and Arthur & Associates Real Estate, Inc.,
an Oregon corporation,
dba L. A. Development Co.,
*Appellants.*

(C950646CV; CA A92399)

935 P2d 464

Jeffrey Hanson argued the cause for appellants. On the briefs were Tamara H. Lewis and Allen, Yazbeck & O'Halloran, P.C.

Brett R. Chytraus argued the cause for respondent. With him on the brief was Weatherford, Thompson, Quick & Ashenfelter, P.C.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendants Louis Fasano and Arthur & Associates Real Estate, Inc.[1] appeal from the trial court's denial of their motion for summary judgment and from the court's allowance of plaintiff's summary judgment motion. The court determined that plaintiff had a valid lien on defendants' property in the amount of $55,947, together with pre- and post-judgment interest at 18 percent per annum, and ordered the foreclosure of that lien. Defendants also assign error to the award of attorney fees to plaintiff, pursuant to ORS 87.060.[2] We affirm.

Defendants were the principals of a real estate development business, L.A. Development Co., that contracted with Kemp Construction, Inc. to build a subdivision in Sherwood. Kemp Construction, in turn, entered into a subcontract with plaintiff, by which plaintiff was to provide sand, gravel, and rock products for the subdivision. Plaintiff provided materials with a reasonable value of $70,208.35 but received payment of only $17,395.07. Thereafter, plaintiff filed this action, seeking, *inter alia*, to foreclose a lien on certain escrowed funds in lieu of a lien on defendants' property. Plaintiff's complaint alleged, in material part:

> "The contract price and agreed and reasonable value of the materials furnished by Plaintiff to [Kemp Construction] and used and incorporated in the construction * * * is the sum of [$70,208.35], together with eighteen percent (18%) interest per annum from January 5, 1995, until paid. No part of said sum has been paid except the sum of [$17,395.87] and there is now due and owing to plaintiff the

---

[1] Defendant Kemp Construction, Inc., is not involved in this appeal. When we refer to defendants in this opinion, we refer only to Fasano and Arthur & Associates.

[2] ORS 87.060(5) provides:

"When notice of intent to foreclose the lien has been given, pleaded and proven as provided for in ORS 87.057, the court, upon entering judgment for the lien claimant, shall allow as part of the costs all moneys paid for the filing or recording of the lien and all moneys paid for title reports required for preparing and foreclosing the lien. In a suit to enforce a lien perfected under ORS 87.035 the court shall allow a reasonable amount as attorney fees at trial and on appeal to the party who prevails on the issues of the validity and foreclosure of the lien."

sum of [$55,947.07], together with service charges thereon at the rate of eighteen percent (18%) per annum from March 6, 1995, until paid."

Plaintiff prayed for a decree declaring its lien to be "a first, valid, and subsisting lien against the escrowed funds," and ordering the foreclosure of the lien

"for the amount of [$55,947.07], together with interest thereon at eighteen percent (18%) per annum from March 6, 1995, until paid, [$10.00] as the recording fee, its reasonable attorney fees, and for its costs and disbursements incurred herein, against the funds held in escrow[.]"

Defendants answered with the affirmative defense that the lien was invalid because "plaintiff failed to deliver to L.A. Development a Notice of Right to Lien, as is required by ORS 87.018, 87.021 and 87.023."

Defendants moved for summary judgment on their affirmative defense, asserting that the trial court should dismiss the complaint because plaintiff had not given them proper notice of its right to lien. Plaintiff opposed defendants' motion and submitted affidavits and argument as to the sufficiency of the delivery of the notice of right to lien. In addition, plaintiff filed a cross-motion for summary judgment "for the reason that there is no genuine issue as to any material fact and Plaintiff is entitled to Judgment as a matter of law." In support of its cross-motion, plaintiff submitted an affidavit from its accountant, Miner, establishing the facts alleged in its complaint, including the entitlement to the 18 percent finance charge.

Defendants did not dispute the sufficiency of plaintiff's *prima facie* showing, *e.g.*, the Miner affidavit, in support of its cross-motion for summary judgment. Rather, the only contested issue was the sufficiency of plaintiff's notice of its right to lien. That issue was one of law; that is, all parties agreed that there were no material disputes of fact and that the issue of notice was purely legal. The trial court concluded that plaintiff had effected delivery of the notice of right to lien, as specified in ORS 87.018, denied defendants' motion for summary judgment, and granted plaintiff's motion.

Thereafter, plaintiff submitted a form of judgment that awarded plaintiff the relief sought in its prayer, including pre- and post-judgment interest, based on the finance charge of 18 percent, and attorney fees. Defendants objected to the form of judgment, arguing that plaintiff was not entitled to all of the attorney fees claimed and that plaintiff was not entitled to 18 percent interest, as alleged in the complaint. The trial court considered and rejected those objections and entered judgment awarding 18 percent pre- and post-judgment interest and attorney fees.

On appeal, defendants make three assignments of error. In their first assignment, defendants argue that the trial court erred in concluding that plaintiff had given valid notice of its right to lien. ORS 87.021 provides, in part:

"(1) Except when material, equipment, services or labor * * * is furnished at the request of the owner, a person furnishing any materials, equipment, services or labor * * * for which a lien may be perfected * * * shall give a notice of right to a lien to the owner of the site."

ORS 87.018 provides:

"All notices required under ORS 87.001 to 87.060 * * * shall be in writing and delivered in person or delivered by registered or certified mail[.]"

The uncontroverted facts, as presented in the summary judgment submissions, are that plaintiff sent notice of its right to lien on September 23, 1994, via certified mail, to L.A. Development's former address at *8875* SW Beaverton-Hillsdale Highway. L.A. Development's correct address was *8925* SW Beaverton-Hillsdale Highway. The postal carrier nevertheless delivered the notice on September 26 to the correct address, which L.A. Development shared with another business, Carefree Property Management. In an affidavit, which is part of the summary judgment record, Carefree's receptionist, Marillyn Bennett, explained:

"Anyone desiring to gain access to the offices of L.A. Development Co. had to go up a set of outside stairs and then walk through the offices of Carefree Property Management and past my desk as receptionist for Carefree before coming to the office of L.A. Development. When the postman had certified or registered mail for L.A. Development Co., he

would first stop at my receptionist desk and inquire if there was anyone present in the offices of L.A. Development. The majority of the time, there was no one present in the offices of L.A. Development and I would sign for any registered or certified mail addressed to L.A. Development. If Mr. Lutz [one of L.A. Development's principals] was going to be on vacation or gone for an extended period of time, he would advise me of that fact and request that I leave any mail for L.A. Development on his desk in his office. The practice of my signing for certified or registered mail for L.A. Development continued over a period of several years. At no time did Mr. Lutz or Mr. Fasano [the other principal of L.A. Development] ever instruct me that I was not to sign for certified or registered mail addressed to L.A. Development Co."[3]

The return receipt for plaintiff's certified letter showed that Bennett had signed for the letter, although Bennett did not recall receiving the letter, and the principals of L.A. Development stated that they had never received the letter.

■■■ Defendants argue that, based on that evidence, plaintiff failed to meet the statutory notice requirements. The issue reduces to whether Bennett acted as an agent for L.A. Development in accepting and signing for the certified letter.[4] We conclude that, based on the uncontradicted facts, Bennett had apparent authority to sign for the mailed notice. "Apparent authority" arises when "the principal has clothed the agent with apparent authority to act for the principal in that particular. In other words, the principal permits the agent to appear to have the authority to bind the principal."

---

[3] The summary judgment record includes two affidavits by Bennett explaining the instances in which she would sign for L.A. Development's certified or registered mail. The affidavits do not contradict each other, nor do they raise differing inferences regarding Bennett's practice of signing for the certified and registered mail.

[4] Defendants, citing *Harris and Harris*, 104 Or App 209, 799 P2d 699 (1990), *rev den* 311 Or 166 (1991), argue that notice to the wrong address renders the notice invalid. *Harris*, which dealt with service of process under ORS 19.028(2), is inapposite to the facts of this case. Unlike in *Harris*, the letter in this case was delivered by a postal carrier to the correct address. Moreover, *Harris* emphasized the concern that service to the wrong address could create situations where the "intended individual will *never* receive notice of any pending proceedings." ORS 87.018 does not present the same concern. Unlike ORS 19.028(2), which allows a party to serve a notice of appeal by first class mail, ORS 87.018 requires that notice by mail occur either by certified or registered mail. It thus provides additional assurance that the intended individual does receive notice of the lien claim.

*Wiggins v. Barrett & Associates, Inc.*, 295 Or 679, 687, 669 P2d 1132 (1983).

In this case, it is clear that L.A. Development permitted Bennett to appear to those delivering mail as someone with authority to accept and sign for registered or certified mail when no one from L.A. Development was available to do so. By allowing the practice to go on, without objection, "over a period of several years," and by expressly requesting Bennett to leave any mail for L.A. Development on its principal's desk when he was gone for an extended period of time, L.A. Development clothed Bennett with the apparent authority to accept and sign for its certified mail.

It is undisputed that Bennett signed for the letter. Thus, because L.A. Development's agent received the certified letter, notice was given under ORS 87.018. The trial court correctly denied defendants' summary judgment motion.

■   Defendants' second assignment of error challenges the trial court's entry of a judgment that provides for 18 percent interest on the outstanding balance of defendants' debt. Defendants argue that the allowance of 18 percent interest was erroneous in that the rate of interest was derived from a service charge in a credit agreement to which L.A. Development was not a party. In so arguing, defendants rely on *Alley v. Erbach*, 89 Or App 5, 747 P2d 360 (1987), and *P & C Construction Co. v. American Diversified*, 101 Or App 51, 789 P2d 688 (1990). Plaintiff contends that defendants did not timely object to the 18 percent rate, in that plaintiff's entitlement to that relief was determined when the court granted plaintiff's cross-motion for summary judgment, and defendants did not dispute plaintiff's entitlement to the 18 percent rate in that context. Rather, defendants initially disputed plaintiff's entitlement to 18 percent interest in objecting to the proposed form of judgment. We agree that defendants waived their objection by failing to contest the 18 percent rate in the context of plaintiff's cross-motion for summary judgment.

Plaintiff's complaint alleged an entitlement to recover the 18 percent "service charge," both in its complaint and in its prayer. *See* 147 Or App at 219-20. Plaintiff moved

for summary judgment on *all* of the allegations of its complaint and, as support for that motion, provided an affidavit establishing the existence of each factual allegation, including that there was a service charge of 18 percent per annum on the outstanding balance of the debt owed plaintiff. Plaintiff thus made a *prima facie* showing of the existence of the service charge. Defendants did not offer any evidence to contradict plaintiff's affidavit. Nor did they argue at summary judgment, as they do now, that, regardless of the existence of the service charge, as a matter of law, plaintiff was not entitled to the service charge. Defendants did nothing.

Defendants' attempt to raise the issue pursuant to an objection to the form of judgment was a collateral attempt to revisit a matter on which the court had, without objection, allowed summary judgment. An objection to the form of judgment is not the proper vehicle for making such a request.[5] Moreover, to the extent that defendants' motion could be cast as an ORCP 71 C motion requesting the trial court to "modify [the] judgment within a reasonable time," the trial court's power to make such modifications is "limited to technical amendments and extraordinary circumstances, such as extrinsic fraud." *Adams and Adams,* 107 Or App 93, 96, 811 P2d 919 (1991). Defendants' arguments present none of those concerns.

Finally, we have considered, and reject without further discussion, defendants' third assignment of error, which pertains to plaintiff's recovery of attorney fees.

Affirmed.

---

[5] The impropriety of that device is highlighted by the record deficiencies in this case, which preclude effective review of defendants' argument. Central to defendants' position is the content of plaintiff's agreement with Kemp Construction, as well as the construction contract between Kemp Construction and L.A. Development. However, neither of those documents appears in the record. If defendants had contested plaintiff's *prima facie* showing, particularly with regard to the 18 percent rate, on summary judgment, one or more of the parties could presumably have submitted those documents.