Argued and submitted February 9, affirmed as to Alley's judgment, modified and affirmed as modified as to Hagerty's judgment December 23, 1987

ALLEY et al,
*Respondents,*

*v.*

ERBACH et al,
*Appellants.*

(84-10-19,856-L; CA A38658)

747 P2d 360

William M. Holmes, Bend, argued the cause for appellants. With him on the briefs was Gray, Fancher, Holmes, Hurley & Bischof, Bend.

Barbara A. Haslinger, Bend, argued the cause for respondents. With her on the brief was McCord & Haslinger, P.C., Bend.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

**RICHARDSON, P. J.**

Plaintiffs brought this action to foreclose separate construction liens, pursuant to ORS 87.060, for rental equipment that they had provided for construction of a spillway on defendant's property. The individual defendant-appellants are members of a partnership doing business as Star Mountain Ranch (Ranch), and we refer to all appealing defendants by that name. On appeal, Ranch argues that interest assessments were improperly included in the lien amounts. It also argues that the liens were invalidated by partial destruction and subsequent reconstruction of the improvement and inaccurate property descriptions in the lien claim. We affirm in part, but disallow interest on the lien amount awarded to plaintiff Hagerty.

Part of a reservoir spillway owned by Ranch on property leased from BLM collapsed. A contractor was retained to repair the spillway, and H-T Construction (H-T) was employed as a subcontractor. H-T rented equipment from plaintiffs for use in repairing the spillway. H-T, however, left the project before the job was completed, and it was completed by the general contractor. Before H-T's departure, water had eroded parts of the compacted fill below the new spillway, and Ranch was eventually forced to remove 60 to 70 percent of the material and reconstruct the spillway. It was later determined that fill material used by H-T had not been cleaned pursuant to applicable specifications and that resulted in settling of the material and the eventual water erosion.

Plaintiffs were not paid in full by H-T for the rental equipment, and they filed construction liens. Both liens describe the reservoir as being located in Section 32, Township 24 South, Range 38 East, in Malheur County, Oregon. Ranch proved that the reservoir was actually located in Township 23 South. The trial court upheld the liens and entered judgment in favor of Alley for $3,249.50 and in favor of Hagerty for $1,363.59. The amount awarded Alley included compounded interest at 24 percent for late payment, as provided in the written rental agreement. The amount awarded Hagerty included interest at 14 percent, as provided in a promissory note which H-T had given Hagerty some time after the original rental agreement was made.

In its first assignment, Ranch argues that there was

no proof of the reasonable rental value of the equipment, as required by ORS 87.010(3):

> "A lien for rented equipment under subsection (1) or (2) of this section shall be limited to the reasonable rental value of the equipment notwithstanding the terms of the underlying rental agreement."

Ranch does not dispute that the rental for the equipment stated in the two rental agreements is reasonable. It contends that the interest charges imposed by Alley on the late payments and the interest specified in the promissory note given by H-T to Hagerty were not properly included as rent. It is not sufficient, it argues, that the interest assessments are included in the rental contract, because ORS 87.010(3) makes that contract irrelevant.

■ ORS 87.010(3) makes no specific reference to interest charges as part of the reasonable rental value of the equipment and thus does not include or exclude those amounts. *Former* ORS 87.060(2) is helpful in determining what constitutes reasonable rental value:

> "In suits to enforce the liens created by ORS 87.010, evidence of the actual costs of the labor and material provided by the lien claimant establishes a rebuttable presumption that those costs are the reasonable value of that labor and material."

In *Brown v. Ruhl,* 78 Or App 333, 717 P2d 162 (1986), we construed the terms "labor and materials" in *former* ORS 87.021 to include rental equipment in relationship to the notice required to claim a lien. That same analysis is appropriate in determining if the quoted presumption in *former* ORS 87.060(2), about the reasonable value of "labor and materials" also applies to rental equipment. We conclude that it does. ORS 87.010(3), *supra,* provides that the lienholder may collect only the reasonable rental value of the equipment; it does not foreclose use of the rental agreement to establish the rental value. The ultimate question is whether that is the *reasonable* rental value.

Both plaintiffs argue that the interest charges are part of the rental agreement and are therefore presumed to be part of the reasonable rental value and that, because Ranch offered no contrary evidence, they had in fact proved the

amount to which they were entitled. We agree as to Alley's lien, but not as to Hagerty's.

■ The Alley contract provides for interest in the event of late payment. Alley presented unrebutted evidence that the custom in the construction equipment rental trade is to charge interest on rent that is not paid timely and that the reasonable rental includes the interest on overdue accounts. Consequently, we conclude that Alley has established that the reasonable rental value includes the interest charges.

■ Hagerty made an agreement with H-T that the rent was to be paid in advance. When H-T was unable to pay as required, it then agreed to 14 percent interest on the unpaid balance and executed a promissory note evidencing the amount due and the interest charges. That was a separate agreement, not involving Ranch or its property and not part of the original rental contract that gave rise to the lien.

■ Ranch argues that, because the nonlienable interest amount was included in the lien claim, the entire lien is invalid. Generally, that would be true. *Hays v. Pigg,* 267 Or 143, 515 P2d 924 (1973); *Smith v. Lichtenthaler,* 206 Or 584, 294 P2d 334 (1956). However, the rule is not invariable. As we explained in *Robertson, Hay & Wallace v. Kunkle,* 69 Or App 99, 104, 686 P2d 399 (1984), the purpose of the rule is to allow the property owner to identify on the face of the lien the claims that are valid and those that are not, so that the owner may discharge the valid ones before a foreclosure proceeding is commenced. In *Robertson,* we held that, although lienable and nonlienable items were lumped together, the parties had sufficient knowledge of the circumstances to identify the correct amount of the lien. We concluded that the lien would stand with deduction of the nonlienable items.

That approach is appropriate in relation to Hagerty's lien. Ranch was aware of the work performed on its behalf and the details of its progress. Although Hagerty's lien statement did not specifically distinguish the dollar value of the interest charged, it did include an unambiguous notation that interest would be assessed at 14 percent per annum dating from February 1, 1984. Under the circumstances, it appears that Ranch had notice on the face of the lien claim sufficient to determine the rental amount apart from interest charges. Hagerty's lien is valid, less the interest.

■ In the second assignment of error, Ranch argues that the removal and reconstruction of the spillway on which plaintiffs' equipment was used invalidates their liens. It cites *Chenoweth v. Spencer,* 64 Or 540, 131 P 302 (1913), for the proposition that a construction lien attaches primarily to an improvement; thus a lien is extinguished if the improvement is destroyed. *Chenoweth* involved a materialman's lien on land where third parties had constructed a house which was later completely destroyed by fire. In the present case, the spillway remained functional throughout the reconstruction operation, and 30 percent of the initial fill material was retained. Moreover, the slope cuts and preparation work for which the rental equipment was used were left undisturbed. We agree with the trial court's summation that, unlike the house in *Chenoweth,* "the essential character of the improvement remained." It is therefore subject to plaintiffs' liens.

■■ Finally, Ranch maintains that the inaccurate property description invalidated the liens. *Former* ORS 87.035(2)(d) requires that a lien include "[a] description of the property to be charged with the lien sufficient for identification." In determining whether a lien is valid, substantial compliance with the statutory requirements is sufficient. *McGregor Co. v. Heritage,* 291 Or 420, 631 P2d 1355 (1981). As we noted in *C-3 Builders, Inc. v. Krueger,* 56 Or App 502, 642 P2d 344, *rev den* 293 Or 190 (1982), whether there has been substantial compliance depends on the degree of non-compliance, the policy underlying applicable statutory provisions and the prejudice to the owner or other parties.

■■ Although the lien notices in the present case contained wrong township numbers, the description was otherwise sufficient to enable Ranch to identify the subject improvements. The construction lien law should be liberally construed in order that it perform its underlying function of protecting those who provide materials and perform labor on improvements on others' property. *Pendleton Grain Gr. v. Sunbest Corp.,* 271 Or 48, 530 P2d 82 (1975). Ranch acknowledges that it was not prejudiced by the inaccurate description and the record has not revealed any third parties who were adversely affected. We hold that plaintiffs were in substantial compliance with *former* ORS 87.035 and that their liens are valid.

Affirmed as to Alley's judgment; judgment of foreclosure on Hagerty's lien modified to delete interest and affirmed as modified.