Argued and submitted September 20, reversed and remanded November 13, 1996, petition for review denied April 8, 1997 (325 Or 247)

KNEZ BUILDING MATERIALS CO.,
an Oregon corporation,
*Appellant,*

*v.*

BELL-AIR ESTATES, INC.,
an Oregon corporation,
*Respondent,*

*and*

Will SPINKS,
dba Dynamic Drywall,
and First Security Bank of Oregon,
*Defendants.*

(93C-10484; CA A89577)

927 P2d 608

Christopher R. Ambrose argued the cause for appellant. On the briefs were Holly Helmuth Martin, David R. Ambrose, Christopher R. Ambrose, and Ambrose & Associates, P.C.

W. Wallace Ogdahl argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Plaintiff appeals from the judgment for defendant Bell-Air Estates, Inc. (defendant)[1] in this lien foreclosure action. We reverse.

Plaintiff supplied drywall to defendant Spinks (Spinks), who was a subcontractor on a construction project for defendant on property belonging to defendant. Spinks delivered and installed the drywall for the project between June 23 and August 17, 1992. For the regular billing cycle ending on July 25, defendant issued a check payable to plaintiff and Spinks jointly. The back of the check contained a "lien waiver," providing that the payee relinquished all lien rights by endorsing it. After negotiating the check, plaintiff allowed Spinks to retain a substantial part of the proceeds, although he owed past due amounts to plaintiff. Plaintiff continued to supply drywall to Spinks until Spinks left the project in mid-August. Plaintiff claimed that defendant owed it amounts for both the periods before and after July 25. Defendant refused to make further payments and, consequently, plaintiff filed a lien for materials in the unsegregated amount of $12,779.50. This action ensued.

The trial court ruled that the portion of the lien covering materials supplied on or before July 25, was defeated by plaintiff's endorsement of the check containing the lien waiver. In so ruling, the court rejected a number of arguments by plaintiff that the waiver should not be given effect. The court next ruled that the portion of the lien covering materials supplied after July 25 was ineffective, because "[t]hose amounts cannot be segregated except by extrinsic evidence apart from the lien itself."

On appeal, plaintiff challenges the court's rulings as to both the pre- and post-July 25 components of the lien. We are unpersuaded by plaintiff's arguments regarding the former, and they require no discussion. Accordingly, we find no error in the trial court's disposition of the pre-July 25 components of the lien. However, we agree with plaintiff that the court erred by holding that the portion of the lien relating to

---

[1] The other two defendants below are not parties to this appeal.

materials for the later period was defeated by the so-called "rule of segregation."

■     In *Hays v. Pigg*, 267 Or 143, 148, 515 P2d 924 (1973), the Supreme Court described and explained that rule:

> "The general rule has been that where unsegregated lienable and nonlienable charges are lumped together in the lien as one item so that extrinsic evidence is necessary to segregate them, the right to a lien is lost as to all such unsegregated items. *Smith v. Lichtenthaler*, 206 Or 584, 586, 294 P2d 334 (1956); *Anderson v. Chambliss*, 199 Or 400, 414, 262 P2d 298 (1953). The reason for the rule is stated in *Benj. Franklin S&L v. Hallmark*, 257 Or 436, 441, 479 P2d 740 (1971), to be the right of the owner to know from the face of the lien as filed, the amounts of valid claims which have become a charge upon his property so that he may, in advance of foreclosure, discharge the property from the encumbrance by rendering a payment without incurring the cost of litigation."

However, the court in *Hays* proceeded to define exceptions to the rule and to explain why it did not invalidate the lien in question in that case:

> "In the present case the defendants were at all times aware of the defects and deficiencies in the prefabricated home and of plaintiff's negotiations with the supplier for a credit on the purchase price. As a result, defendants had sufficient knowledge with which to question the amount of the lien to make sure they received the credit, and they would not have been prejudiced by a lack of information in settlement prior to the commencement of the suit. *A simple question would have supplied sufficient information concerning the status of the settlement.*" *Id.* at 148.[2] (Emphasis supplied.)

Later cases have reiterated that the rule is not to be applied inflexibly, or in a manner that defeats a lien in circumstances where the lienable and nonlienable items can be readily ascertained albeit without relying on the lien document alone. *E.g., Cons. Elec. v. Jepson Elec.*, 272 Or 376, 379-80,

---

[2] It is arguable that the question in *Hays* was not all that simple, and it clearly required the defendants to resort to "extrinsic evidence." In *Hays*, and in the other cases cited in the text, the appellate courts have made it less than clear whether segregation is in fact the rule or has been largely swallowed by its exceptions.

537 P2d 80 (1975); *Alley v. Erbach*, 89 Or App 5, 747 P2d 360 (1987); *Robertson, Hay & Wallace v. Kunkle*, 69 Or App 99, 686 P2d 399 (1984).

Plaintiff argues, *inter. alia*, that its lien is enforceable as to the materials it furnished Spinks after July 25 for use in defendant's project, because these facts come within the exceptions to the rule of segregation articulated in the above cases. Defendant responds that, in the absence of segregation or extrinsic data, it could not have known which items were lienable and which were not and, therefore, the rule of segregation applies and the lien is not enforceable as to the materials furnished after July 25. Defendant points to the fact that there was an ongoing seller-buyer relationship between plaintiff and Spinks that predated the work that Spinks performed for defendant. Defendant notes that the amounts that plaintiff retained from the joint payment for the pre-July 25 period were applied by plaintiff to all of Spinks's past-due debts. Those debts included amounts reflected on invoices dating from June 2, 1992, but plaintiff's first invoice to Spinks for materials supplied in connection with defendant's project was dated July 17. Defendant concludes:

> "Only Plaintiff and Spinks knew what Spinks owed for materials on the [date of the check], and how much of Spinks' obligation to Plaintiff related to Bell-Air Estates, as opposed to other jobs Spinks had. Neither Bell-Air nor [its] general contractor had any idea what portion of Spinks' bill was for materials and how much was unpaid before the * * * check was credited * * *."

Although those arguments and related ones that defendant makes might assist it if the question were the effectiveness of the lien as to materials supplied before July 25, in the present posture of the case the segregation issue relates only to the enforceability of the lien as it applies to materials supplied after that date. There is, of course, a connection between the two periods: The lien sets forth a lump sum amount for materials for the two combined, and there is at least a mathematical relationship between the lienable components for the two periods. However, there is also a difference between the two. Unlike the pre-July 25 period, the later one included no billings from plaintiff to Spinks for

materials that were supplied before Spinks began work on defendant's project, and plaintiff was aware throughout the later period that Spinks was providing services to defendant.

Plaintiff asserts:

> "Defendant Bell-Air was in a position to raise the proper questions and sort out the materials claim by date if it had any questions. Defendant Bell-Air knew that the most its check could arguably cover was materials invoiced up to July 25, 1992 and that the waiver stamped upon that check could not possibly cover subsequent deliveries of materials. If it contended that there was a waiver of lien rights prior to July 25, 1992 because of the waiver on the back of its July 25 check, all it needed to do was ask the simple question of what materials were delivered post July 25, 1992."[3]

In other words, defendant could have obtained all pertinent information from plaintiff concerning Spinks's post-July 25 purchases of drywall for the project, independently of any information or lack of information for the earlier period, by asking plaintiff "a simple question" of the kind described in *Hays*. 267 Or at 148.

Defendant responds that, even assuming that it was aware that plaintiff possessed records that could have provided the answer to that question, and assuming further that "defendant would have gotten sufficient information" to pay the lien and avoid litigation if it had asked the question, plaintiff would nevertheless not come within the recognized exceptions to the segregation rule. Defendant explains:

> "There are only two exceptions to the Rule Of Segregation as set forth in *Hays v. Pigg*, supra. The first exception * * * is recited in the rule itself, and that is if a defendant can determine from the claim of lien itself without resorting to evidence extrinsic to the lien, or from knowledge that defendant has, what portion of the lien is not valid, and thus what portion is valid; the second exception is the rule of 'de minimis non curat lex,' as set forth in *Hays v. Pigg*,

---

[3] Plaintiff makes several alternative arguments, including that there should be what amounts to a *per se* rule that all items in a lien are to be considered lienable in circumstances where part of the lien is defeated on a waiver theory. We do not reach those other arguments. For purposes of this opinion, we assume that the segregation rule *can* apply to the remainder of a lien when lien rights for some of the items embodied in it have been waived.

supra, which provides that nonlienable items in an unsegregated lien will not destroy the lien if those nonlienable items are *extremely small* (emphasis added) in relation to the total unsegregated lien claim."[4]

■   As we read *Hays* and related cases, however, the first exception is not limited to situations where the defendant has *direct* knowledge of what portion of the lien is valid; that exception also encompasses situations where the defendant has "sufficient knowledge with which to question the amount of the lien" and to ask a "simple question" that can supply "sufficient information" about the amount necessary to discharge the lien. *Hays*, 267 Or at 148.

We conclude that defendant had sufficient knowledge here to ask plaintiff the simple question from which the necessary information could have been ascertained. Whatever the appropriate and practical limits of the "simple question" exception, *see* note 2, it is apparent that the question here was simple—or at least simpler than the question in *Hays*—and susceptible of a simple answer. Defendant was presumably aware of the amount of drywall Spinks installed on the project and was aware that Spinks obtained the drywall from plaintiff. We also conclude, as the trial court apparently did, that there was no showing that any of the material furnished by plaintiff to Spinks *after June 23* was for jobs other than defendant's project. Further, defendant had no reason to question that plaintiff followed usual billing and record keeping practices reflecting quantities, amounts, dates and other salient information. Defendant does not contend that the information was *unobtainable*, but suggests that, had it asked plaintiff the question, it *might* not have obtained a responsive answer. However, that prediction does not excuse defendant from asking the simple question. We remand to the trial court to determine the lienable amounts for the post-July 25 period and to enter judgment accordingly.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

[4] The second exception described by defendant is not a factor in our decision of this case.