Argued and submitted November 4, 1996, decision of the Court of Appeals and
judgment of the circuit court affirmed April 29, 1997

Keith A. MILLER
and Ivanna D. Miller,
husband and wife,
*Petitioners on Review,*

*v.*

Raymond C. OGDEN,
*Respondent on Review.*

(CC 91P-1247; CA A81755; SC S42575)

935 P2d 1205

Keith A. Miller, Sweet Home, argued the cause *in propria persona* for petitioners on review. George W. Kelly, Eugene, filed the petition.

Clayton C. Patrick, Salem, argued the cause for respondent on review. Ron P. MacDonald, Salem, filed the brief.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.

GILLETTE, J.

## GILLETTE, J.

Plaintiffs, Keith and Ivanna Miller, seek review of a Court of Appeals decision that affirmed a trial court judgment denying their claims for specific performance of a contract to convey real property and for foreclosure of construction and nurseryman's liens. *Miller v. Ogden*, 134 Or App 589, 896 P2d 596 (1995). We allowed review, limited to the issue of whether plaintiffs are entitled to a construction lien. We conclude that they are not. We therefore affirm the decision of the Court of Appeals.

A threshold question is the scope of our review. Because plaintiffs' construction lien claim lies in equity, ORS 87.060(1), we may either limit our review to issues of law or review the record *de novo*. ORS 19.125(4).[1] Because our task here is primarily one of statutory interpretation, because the Court of Appeals made factual findings with respect to the lien foreclosure issue, and because plaintiffs have made no persuasive argument in favor of the need for *factual* reassessment, we choose to confine our review to the legal issue presented, viewed in the light of the facts found by the Court of Appeals. *Compare Stubbs v. Weathersby*, 320 Or 620, 635 n 8, 892 P2d 991 (1995) (this court exercised *de novo* review, because the Court of Appeals' analysis did not address the issue; therefore, the factual findings below were inadequate).

The following facts either are undisputed or are those found by the Court of Appeals. In the spring of 1990, plaintiffs met defendant, Raymond Ogden, and his wife at a Sabbath school gathering in Dallas, Oregon. Plaintiffs were new to the Dallas area. As was their custom, defendant and his wife invited plaintiffs to dinner after the services. At that dinner, plaintiffs, who hoped to buy some rural land, discovered that defendant and his wife had such land that they were planning to sell. The parties pursued their mutual interest. In September 1990, they signed a "Memorandum of Contract Agreement" in which plaintiffs promised to buy a

---

[1] ORS 19.125(4) provides:

"When the Court of Appeals has tried a cause anew upon the record, the Supreme Court may limit its review of the decision of the Court of Appeals to questions of law."

certain 40-acre parcel from defendant. That document became the basis of plaintiffs' unsuccessful claim for specific performance of a contract to convey real property, a claim that is not before this court.

According to plaintiffs, after signing the "Memorandum of Contract Agreement," they discussed with defendant their desire to repair an existing barn on the property immediately, and defendant agreed that that would be a good idea. Defendant acknowledges discussing repairs on the property, but contends that he gave plaintiffs permission only to cut wood and place a swing set on the land. Defendant testified that he specifically told plaintiff Keith Miller not to work on the barn. There was no writing between the parties that addressed repairs on the property.

In any case, plaintiffs proceeded to repair the barn and otherwise to improve the property.[2] The repairs to the barn consisted of removing and replacing existing corrugated tin siding panels, removing and replacing rotted timbers, and repairing the roof. According to defendant's testimony, he was unaware of the repairs to the barn until January 1991, when he visited the property. At that time, he noticed that plaintiffs "had done some work on the barn," but he did not contact them regarding that work. There is no specific, persuasive evidence that any more work was done thereafter.

Relations between the parties began to deteriorate in June of 1991. Two months later, in August, defendant ordered plaintiffs off the property. Plaintiffs then filed their construction and nurseryman's liens. ORS 87.010; ORS 87.030; ORS 87.358.[3] Plaintiffs relied for their construction lien on ORS 87.010 or, alternatively, on ORS 87.030.[4] Under

---

[2] In addition to repairing the barn, plaintiffs repaired a road, planted nursery stock, and installed a partial fence. At least a portion of that work was the subject of plaintiffs' unsuccessful nurseryman's lien claim. That claim also is not before us.

[3] ORS 87.358 states, in part:

"A person who furnishes nursery stock of the value or agreed price of $25 or more, for planting on land, at the request of the owner of that land, or with the knowledge or consent of the owner has a lien on the land upon which the nursery stock is set out and planted for the reasonable or agreed charges for the nursery stock."

[4] The construction lien is for a total of $3,096.68, $1,560 of which is for labor, with the remainder being for materials.

ORS 87.010, a person may impose a lien against an owner successfully only if the person has performed work at the "instance of the owner of the improvement or the construction agent of the owner."[5] The Court of Appeals found that defendant neither asked nor authorized plaintiffs to repair the barn. *Miller*, 134 Or App at 596. On review, plaintiffs appear to have dropped their argument that they are entitled to judicial foreclosure of their construction lien because they performed the repairs with defendant's permission and at his request. However, an alternative theory supporting a lien is provided by ORS 87.030, quoted below, 325 Or at 253, which allows a lien for work done with the owner's knowledge, but not at the owner's request. This case concerns that alternative theory.

Plaintiffs contend that they are entitled to foreclosure of their construction lien because, under ORS 87.030, defendant "constructively requested" the repair work on the barn. They argue that, even if defendant did not know of the repairs initially, he became aware of those repairs in January 1991, failed to post a notice of nonresponsibility within three days, and thereby "requested" the repairs as a matter of law. Defendant responds that ORS 87.030 applies only if the improvement is *in the process of construction* when the owner becomes aware of it. Because there is no persuasive evidence that the barn repairs had not been *completed* when he visited the land in January 1991, defendant reasons, plaintiffs are not entitled to their lien under ORS 87.030.

The parties' arguments call for us to interpret ORS 87.030, which is an exercise of discerning legislative intent. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (purpose of court in interpreting statute is to determine intent of legislature). The best evidence of the legislature's intent and the starting point for our analysis is the text of the statute. *Ibid.* We also consider context at the first level of analysis; it includes other related statutes. *Id.* at

---

[5] ORS 87.010(1) provides:

"Any person performing labor upon, transporting or furnishing any material to be used in, or renting equipment used in the construction of any improvement shall have a lien upon the improvement for the labor, transportation or material furnished or equipment rented at the instance of the owner of the improvement or the construction agent of the owner."

611. If the legislature's intent is clear from this first level of analysis, then we do not inquire further. *Ibid.* We begin with the text.

ORS 87.030 provides:

"Every improvement * * * constructed upon lands *with the knowledge of the owner* shall be deemed constructed at the instance of the owner, and the interest owned shall be subject to any lien perfected pursuant to the provisions of [the construction lien law], unless the owner shall, within three days after the owner *obtains knowledge of the construction*, give notice that the owner will not be responsible for the same by posting a notice in writing to that effect in some conspicuous place upon the land or the improvement situated thereon."

(Emphasis added.)

By its terms, ORS 87.030 applies to "[e]very improvement." The barn is an "improvement," as that concept is defined by statute.[6] Therefore, ORS 87.030 may apply. However, because plaintiffs did not commence the work with defendant's knowledge, ORS 87.030 applies only if defendant failed to post a notice of nonresponsibility within three days after he obtained "knowledge of the construction" of the improvement. As noted, it is a given in this case that defendant first had knowledge of plaintiffs' improvement to the barn in January 1991. The statutory construction question then becomes: Did what defendant learned in January 1991 constitute knowledge of "the construction," as that term is used in ORS 87.030? "Construction" is defined as the

"creation or making of an improvement, and alteration, partial construction and repairs done in and upon an improvement."

ORS 87.005(2). The Court of Appeals interpreted the definition of construction as referring to a *process, viz.,* "the *act of building." Miller,* 134 Or App at 597 (emphasis added). Because that court found that the repairs to the barn more

---

[6] ORS 87.005(5) defines "improvement" to include

"any building, wharf, bridge, ditch, flume, reservoir, well, tunnel, fence, street, sidewalk, machinery, aqueduct and all other structures and superstructures, whenever it can be made applicable thereto."

likely than not had been completed before defendant saw them, *i.e.*, because plaintiffs failed to persuade the Court of Appeals that construction was continuing as of January 1991, that court concluded that the improvements to the barn were not subject to a lien under 87.030, as a matter of law. *Id.* at 599.

We agree with the Court of Appeals' construction of the applicable law. We note, first, that such an interpretation inheres logically in the text itself. Although the lien is available for every "improvement" that is "constructed," ORS 87.030, it is knowledge of "the construction," not knowledge of "the improvement," that triggers the time limit within which a notice of nonresponsibility must be posted. Knowledge of "the improvement" could arise at any time, including after the improvement was completed. However, knowledge of "the construction" appears most logically from the words themselves to be a reference to a process that is ongoing when it is discovered.

Second, the context in which ORS 87.030 appears supports the foregoing reading. As noted, context is part of the first level of the search for legislative intent under the *PGE* template. *PGE*, 317 Or at 611. For example, ORS 87.021(1), which deals with notice by a lien claimant, provides that the "notice of right to a lien may be given at *any time during the progress of the improvement*, but the notice only protects the right to perfect a lien * * * after a date which is eight days * * * before the notice is delivered or mailed." (Emphasis added.) The emphasized wording makes it clear, we think, that, in ORS 87.021(1), the legislature viewed "construction" as an ongoing process. After an improvement is complete, there no longer can be "any time during the progress" of it. *See also* ORS 87.023 (content of notice of right to a lien must state that a lien may be claimed for materials, equipment, labor, and services provided during the limited period described in ORS 87.021).

From all the foregoing, we conclude that the meaning of "construction" in ORS 87.030 is clear. The term refers to an ongoing *process*, not to a completed project. The remaining factual question becomes, when (in the view of the Court of Appeals) was the present construction project *completed*?

Here, the project with respect to which plaintiffs assert their lien was the repair of the barn. That project, in turn, consisted of a number of separate repairs: the siding, the framework, and the roof. The burden rests on plaintiffs, as the lien claimants, to show that defendant obtained knowledge of the repairs to the barn before the completion of construction, that is, before the completion of the whole project involving the barn. *See Gabriel Pow. & Sup. Co. v. Thompson*, 163 Or 623, 629, 97 P2d 182 (1939) (so holding under former statute). If plaintiffs successfully establish that defendant had knowledge of the construction before it was completed, then defendant is subject to the lien, unless he can show that he posted a nonresponsibility notice within three days of learning about the construction.

Here, we need not reach the effect of the owner's failure to post a nonresponsibility notice, because plaintiffs' evidence did not persuade either of the previous factfinders, the trial court or the Court of Appeals, that defendant had gained knowledge of plaintiffs' work on the barn before that work was completed. Plaintiffs do not deny that the evidence is such that a trier of fact *could* conclude that plaintiffs failed to sustain their burden of proof. Instead, plaintiffs simply present their evidence and argue that this court should, on *de novo* review, accept that evidence. As noted, however, we decline to undertake that task.

The Court of Appeals committed no legal error in construing ORS 87.030 and in concluding, from the evidence, that plaintiffs had not met their burden of proving that the barn repair project (the "construction") was ongoing as of January 1991, when defendant learned of it. Plaintiffs are not entitled to foreclosure of their construction lien.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed.