Argued and submitted October 30, 1997, affirmed on appeal and cross-appeal March 18, petition for review denied September 29, 1998 (327 Or 553)

## A-C CONSTRUCTION, INC.,
a California corporation,
*Respondent - Cross-Appellant,*

*v.*

## BAKKE CORPORATION,
an Oregon corporation;
and United Pacific Insurance Company,
a Pennsylvania corporation,
*Appellants - Cross-Respondents.*

(9401493CV; CA A93474)

956 P2d 219

Richard E. Alexander argued the cause for appellants - cross-respondents. With him on the briefs were Charles F. Adams and Stoel Rives LLP.

Michael Ratliff, Portland, and R. Dennis Orrock, California, argued the cause for respondent - cross-appellant. On the brief were Michael Ratliff and Parks & Ratliff.

Before Riggs, Presiding Judge, and Deits, Chief Judge,* and Landau, Judge.

RIGGS, P. J.

---

* Deits, C. J., *vice* Leeson, J.

**RIGGS, P. J.**

Defendants appeal from a judgment for plaintiff in a lien foreclosure action. Plaintiff cross-appeals, assigning error to the court's denial of his claims for *quantum meruit* and for prejudgment interest under ORS 701.420(2). We affirm on appeal and cross-appeal.

Defendant Bakke Corporation (Bakke) was the primary contractor on the Dairy substation project for Pacific Power & Light Company (PP&L). In September 1993, Bakke invited plaintiff to bid on the subcontract for excavation. When plaintiff agreed to bid, Bakke faxed it a bid form and site plan. Plaintiff bid on the subcontract on September 29. Upon receiving the bid, Bakke telephoned plaintiff and objected to certain pricing provisions. Plaintiff faxed an amended bid to Bakke on September 30. That bid set the price of certain contract items on a per-unit, rather than lump sum, basis, and contained exclusions and conditions that materially affected the price of the subcontract. Bakke again telephoned plaintiff, this time to discuss the exclusions and conditions and the per-unit pricing. Bakke's president testified that plaintiff's project manager agreed to amend those portions of the bid. Plaintiff's project manager denied that the parties reached any such agreement. In any event, Bakke accepted the September 30 bid, and plaintiff began work on the excavation project.

On October 7, 1993, approximately the same date that plaintiff began to work on the project, Bakke faxed plaintiff a purchase order. That document contradicted some of the exclusions and conditions in plaintiff's September 30 bid. It also stated, "All work to be done according plans and specifications by Pacific Power & Light Co." Bakke claims that it sent plaintiff a copy of its contract with PP&L along with the purchase order, but plaintiff denies receiving that contract.

On October 21, 1993, plaintiff billed Bakke for the work it had completed, and Bakke paid plaintiff $57,280. Certain charges in that billing conformed to the terms of the purchase order, rather than to plaintiff's bid. Plaintiff claims that it followed the purchase order only because Bakke

refused to pay the first installment otherwise and that it believed that the contract between the parties was the September 30 bid. That belief is evident, plaintiff claims, from a letter it sent Bakke on October 26, 1993, stating that the bid was the contract. Bakke claims it never received that letter and argued at trial and in this appeal that the letter is a fabrication.

Plaintiff finished its work on the project on December 21, 1993. Two days later it filed a construction lien on PP&L's Dairy substation in the amount of $92,000, pursuant to ORS 87.010(1).[1] On January 5, 1994, plaintiff mailed Bakke its final bill for $87,823. The lien and the final bill both were based on the price structure from plaintiff's September 30 bid, rather than on Bakke's October 7 purchase order. Bakke refused to pay plaintiff's final bill. Bakke also asserts that around that time it began receiving complaints from plaintiff's suppliers and subcontractors, who claimed they had not yet been paid.

On April 20, 1994, plaintiff sued Bakke and PP&L to foreclose its lien, demanding payment of $79,000.[2] Under the terms of its contract with PP&L, Bakke was required to indemnify PP&L for any lien claims arising out of the project. Pursuant to that agreement, Bakke filed a construction release bond under ORS 87.076 in June 1994. The effect of that filing was to transfer plaintiff's lien from PP&L's substation to Bakke's bond, as provided in ORS 87.083(1).[3] The

---

[1] ORS 87.010(1) provides:

"Any person performing labor upon, transporting or furnishing any material to be used in, or renting equipment used in the construction of any improvement shall have a lien upon the improvement for the labor, transportation or material furnished or equipment rented at the instance of the owner of the improvement or the construction agent of the owner."

[2] That demand was less than the original lien of $92,000 because plaintiff agreed to partial satisfaction of its claim during negotiation.

[3] ORS 87.083(1) provides:

"Any suit to foreclose a lien pursuant to ORS 87.060 which is commenced or pending after the filing of a bond or deposit of money under ORS 87.076 shall proceed as if no filing or deposit had been made except that *the lien shall attach to the bond or money upon the filing or deposit and the service of notice thereof upon the lien claimant. The property described in the claim of lien shall thereafter be entirely free of the lien and shall in no way be involved in subsequent proceedings*." (Emphasis supplied.)

court then dismissed the foreclosure action as to PP&L. Plaintiff filed an amended complaint against Bakke and defendant United Pacific Insurance Company, the surety on Bakke's bond.

At trial, the court found that Bakke's October 7 purchase order was the contract between plaintiff and Bakke. The court found further that plaintiff's lien was perfected in the amount of $61,117. That figure represents the outstanding purchase order contract price of approximately $54,000, plus charges for equipment rental, surveying and extra materials that plaintiff claimed in its lien.

On appeal, defendants raise several assignments of error. We review lien foreclosure judgments *de novo*. *Miller v. Ogden*, 134 Or App 589, 595, 896 P2d 596 (1995), *aff'd* 325 Or 248, 935 P2d 1205 (1997).

In their first assignment of error, defendants argue that the trial court erred in finding that they were presently obligated to pay plaintiff anything on the contract, because plaintiff materially breached the contract by failing to pay some of its subcontractors. Plaintiff conceded at trial that some of its suppliers and subcontractors have yet to be paid. However, it argues that its relationship with those parties does not affect Bakke's present duty to pay the remainder of the subcontract price.

As a general proposition, "[a] subcontractor is not required either to pay first for the labor and materials he furnishes or to deduct from the contract price his unpaid bills therefor before he may file a valid lien." *Jersey & Son v. Bailey Const. Co.*, 262 Or 491, 494, 499 P2d 817 (1972). Defendants argue, however, that plaintiff is obligated under the October 7 purchase order to furnish proof of payment of its subcontractors as a precondition of final payment. That contractual obligation, they contend, is incorporated by reference into Bakke's subcontract with plaintiff from Bakke's contract with PP&L, which contains an explicit condition requiring Bakke to pay *its* subcontractors prior to being paid by PP&L.

Defendants argue that Bakke's October 7 purchase order incorporates by reference the entire contract between

Bakke and PP&L. They base that contention on the sentence in the purchase order that reads: "All work to be done according plans and specifications by Pacific Power & Light Co." According to defendants, that sentence binds plaintiff to *all* general and specific terms and conditions of Bakke's contract with PP&L, including conditions relating to payment of subcontractors.

We disagree. The quoted language from the purchase order is insufficient to incorporate the entire prime contract into the contract between plaintiff and Bakke. The purchase order simply requires that plaintiff's "work" must comply with the "plans and specifications" in PP&L's contract. It does not mention or refer to conditions for payment or any other portion of the prime contract and, therefore, does not incorporate those provisions by reference.

Defendants cite *McGrath v. Electrical Const. Co.*, 230 Or 295, 300, 364 P2d 604 (1962), for the proposition that a subcontract may incorporate by reference an entire prime contract. *McGrath* does not aid defendants, however. In that case, the subcontract explicitly incorporated the entire prime contract in the following terms:

> "[A]ll your costs, expense and profit, direct and incidental, for your performance of the work in accordance with the foregoing understandings and the terms in the General Conditions, Specifications and Agreement of the Contract * * * and all supplements thereto." *Id.* at 298.

The broad language in the *McGrath* subcontract binding the subcontractor to "General Conditions, Specifications and Agreement of the Contract" has no parallel in the subcontract between plaintiff and Bakke. Mindful that we may not read into contracts provisions that the parties themselves have not included, *Thompson v. Bolliger, Hampton & Tarlow*, 118 Or App 700, 710, 849 P2d 526, *rev den* 317 Or 163 (1993), we decline to read into Bakke's purchase order a broader incorporation by reference than is apparent on the face of the document. *Accord Edward E. Morgan Co. v. United States*, 230 F2d 896, 903 (5th Cir 1956) (holding that subcontract requirement that "work * * * be performed in accordance with specifications" in prime contract meant that prime contract governed "the manner of the performance of

the work, not * * * the basis for computing the amount to be paid the subcontractor"); *John W. Johnson, Inc. v. Basic Construction Co.*, 429 F2d 764, 773 (DC Cir 1970) (subcontract which bound party to prime contract terms "applicable to the work" did not bind party to general terms and conditions of prime contract). In sum, the subcontract between plaintiff and Bakke does not incorporate by reference the requirement that plaintiff pay its subcontractors and suppliers prior to being paid by Bakke. Accordingly, the trial court did not err in finding that Bakke has a present duty to pay plaintiff under the subcontract.

Defendants' second assignment of error addresses the trial court's conclusion that plaintiff's construction lien is valid. Defendants make three separate arguments that the lien is invalid. First, they contend that the lien is invalid because it overstates the amount owed to plaintiff. As previously noted, the court found that Bakke owed plaintiff only $61,117 after plaintiff sought first $92,000 and then $79,000 in its foreclosure action.

■ Overstatements will not automatically invalidate a lien. "In order for the overstatement to invalidate the lien, it must be an intentional one or one made through culpable negligence." *Hays v. Pigg*, 267 Or 143, 147, 515 P2d 924 (1973). For a negligent overstatement to invalidate a lien, that overstatement must be "so grossly and palpably negligent as to raise a presumption of fraud." *Brown v. Farrell; Farrell v. Brown*, 258 Or 348, 355, 483 P2d 453 (1971).

■ Here, plaintiff's overstatement was based on its contention that its bid, and not Bakke's purchase order, formed the contract between the parties. The trial court did not accept that contention, as noted above. However, the court also upheld plaintiff's lien and found that it *had been filed in good faith*, thereby implicitly rejecting defendants' contention that the lien was overstated through fraud or culpable negligence. Defendants dispute the latter finding because, they argue, the testimony of plaintiff's officers regarding the bid and purchase order was so unbelievable and self-contradictory as to raise the presumption that they were lying, or at least that they were grossly negligent in preparing their lien.

We reject defendants' argument. Although we review lien foreclosure claims *de novo*, we give substantial weight to the trial court's credibility findings. *Teeny v. Haertl Constructors, Inc.*, 111 Or App 543, 550, 826 P2d 1029, *rev'd in part on other grounds* 314 Or 688, 842 P2d 788 (1992). Here, the trial court heard a great deal of confusing testimony from both parties concerning the factual underpinnings of their contractual relationship. Much of that testimony was directly in conflict, and defendants alleged that plaintiff's witnesses were lying when they stated that they believed their bid was the contract. The trial court rejected those allegations when it found that plaintiff's lien was filed in good faith. After reviewing the record, we find no reason to upset the trial court's finding that plaintiff's lien was based upon a good faith, though mistaken, assumption that the bid was the contract. Accordingly, we reject defendants' contention that the record compels us to find that plaintiff's lien was fraudulently overstated.

Nor do we agree with defendants that plaintiff's overstatement was the result of culpable negligence. On this record, it is easy to see how the parties could have reasonable but conflicting interpretations of their business communications. Plaintiff was not culpably negligent when it believed that its bid was the contract or when it based its lien claim on that belief. We find that the overstatement of plaintiff's lien was not the result of fraud or culpable negligence and decline to find the lien invalid on that basis.

■ Defendants next contend that the lien is invalid because it included both lienable and nonlienable charges, and those charges were not segregated on the face of the lien. This argument is based upon the fact that plaintiff asked for more money than the trial court awarded and sought per-unit payment for certain items as provided in its bid, which items were payable in lump sums under Bakke's purchase order. The traditional Oregon rule—known as the "rule of segregation"— is that a lien which commingles lienable and nonlienable charges is invalid if those charges can only be segregated through resort to extrinsic evidence. *See, e.g., Smith v. Lichtenthaler*, 206 Or 584, 586, 294 P2d 334 (1956). The purpose of the rule is "to allow the owner of the property to identify on the face of the lien the claims that are valid and

those that are not so that he may discharge the valid ones before a foreclosure proceeding is commenced * * *." *Robertson, Hay & Wallace v. Kunkle*, 69 Or App 99, 104, 686 P2d 399 (1984) (citing *Hays*, 267 Or at 148). However, as part of the trend in modern lien law "to dispense with arbitrary rules which have no demonstrable value in a particular factual situation," *Cons. Elec. v. Jepson Elec.*, 272 Or 376, 380, 537 P2d 80 (1975), Oregon courts, in recent years, have declined to apply the rule of segregation woodenly in cases where its application would not advance the purpose for which it was created. *See Hays*, 267 Or at 148-49 (creating exceptions to rule of segregation).

Relevant to this case, modern Oregon courts have declined to invalidate unsegregated liens where "the owners had sufficient knowledge with which to question the amount of the lien and thus would not have been prejudiced in settlement negotiations prior to the commencement of the suit." *Robertson*, 69 Or App at 104 (citing *Hays*, 267 Or at 148). Further, an unsegregated lien will not be held invalid if the owner can separate lienable from nonlienable charges by asking the lienholder "a simple question." *Hays*, 267 Or at 148. When the owner has such knowledge, or can acquire it through simple questioning, "the lien [will] stand with deduction of the nonlienable items." *Alley v. Erbach*, 89 Or App 5, 9, 747 P2d 360 (1987).

Here, defendants had such knowledge at all times relevant to this litigation. They knew that the difference in the amount on the face of the lien and the amount they believed they were obligated to pay was the result of the parties' disagreement concerning the terms of their contract. Given that defendants had such knowledge, we decline to hold that the parties' good faith disagreement regarding the contract price is sufficient reason to invalidate plaintiff's lien.

That result is consistent with our recent decisions in similar cases. In *Robertson*, we held that a lien was valid even though it contained a charge for over $40,000 in materials that had been purchased but never incorporated into the project. 69 Or App at 104. Because the owner knew that

some materials had never been incorporated into the construction, we held that he had sufficient knowledge to question the amount of the lien. *Id.* In *Alley,* we held that a lien was valid even though it contained an unsegregated charge for 14 percent interest on the contract price. 89 Or App at 9. At trial, the court disallowed that interest charge. *Id.* Nevertheless, we held that the lien was valid because the lien documents indicated that the lienholder intended to charge interest, and thus the owner had sufficient knowledge to question the amount on the face of the lien. *Id.* There, as here, the lien was valid even though the owner had to go to court to avoid paying the invalid lien charges. *Id.* Most recently, we held that a lien was valid even though it included an unsegregated charge for drywall for which the owner already had paid, and for which the lienholder had signed a "lien waiver." *Knez Building Materials Co. v. Bell-Air Estates,* 144 Or App 392, 398, 927 P2d 608 (1996), *rev den* 325 Or 247 (1997). As in *Alley,* the owner in *Knez* had to go to court to avoid paying the nonlienable charges. However, because the owner "could have obtained all pertinent information * * * by asking plaintiff a 'simple question,' " *Id.* at 397, we held that the lien was valid despite the inclusion of unsegregated, nonlienable charges. *Id.* at 398.

We conclude that, as in those cases, defendants here had sufficient knowledge to question the amount on the face of the lien and to separate lienable from nonlienable charges. Accordingly, the lien was not invalid because it included charges that the trial court ultimately decided defendants were not obligated to pay. The trial court properly found that the lien was valid and could be foreclosed after deduction of those nonlienable charges.

■ Defendants' third challenge to the validity of the lien is premised on the fact that plaintiff, a subcontractor, filed a lien for the subcontract price, rather than for the reasonable value of the work it performed. The traditional Oregon rule is that a subcontractor may file a lien against an owner only in the amount of the reasonable value of labor and material supplied. *See, e.g., Lakeview Drilling Co. v. Stark et al.,* 210 Or 306, 314, 310 P2d 627 (1957). The reason for that rule is that an owner is not in contractual privity with a subcontractor

and, therefore, should not be bound by the terms of the contract between the subcontractor and the contractor, but should be obligated only for the reasonable value of the benefit conferred by the subcontractor. *Christman v. Salway et al.*, 103 Or 666, 676, 205 P 541 (1922). Defendants argue that plaintiff's lien is invalid as a matter of law because plaintiff presented no evidence to establish the reasonable value of its work, relying instead on the subcontract price as proof of the amount owed.

■ The difficulty with defendants' argument is that the reasonable value limitation applies to liens by subcontractors against *owners*. This is an action by a subcontractor against a contractor, and the parties are clearly in contractual privity. It is true that plaintiff's lien was originally filed against the owner, PP&L, but, as noted above, the lien transferred from PP&L's property to Bakke's bond when that bond was filed. ORS 87.083(1). Plaintiff's foreclosure action against PP&L was dismissed with prejudice. We decline to apply the limitation on subcontractor's liens against owners in this case, where applying the limitation would allow Bakke to avoid paying on its own contract with plaintiff.

In sum, we affirm the trial court on defendants' second assignment of error. None of defendants' three grounds for invalidating the lien is persuasive. The trial court did not err in finding that plaintiff's lien was valid in the amount of $61,117.

■ Our resolution of those issues also effectively disposes of defendants' third and fourth assignments of error. In their third assignment, defendants seek attorney fees under ORS 87.060(5), which grants such fees in lien foreclosure actions to the party who prevails on the issues of lien validity and foreclosure. Because defendants have not prevailed on those issues, they are not entitled to attorney fees under ORS 87.060(5). In their fourth assignment of error, they seek to recover attorney fees and bond premiums that they were contractually obligated to pay to PP&L following plaintiff's original lien foreclosure action against PP&L. Defendants assert that they are entitled to recover those fees and premiums

from plaintiff because plaintiff breached its contract with Bakke by failing to pay its subcontractors and suppliers. Because we have held that plaintiff did not breach its contract with Bakke in that manner, we reject defendants' claim. Defendants also claim in their fourth assignment of error that they are entitled to recover their bond premiums under ORS 87.076(4)(a), which allows recovery of bond costs from a lienholder who fails to release or foreclose a lien within the time provided by statute. Because plaintiff moved to foreclose its lien within the statutory time period, ORS 87.055, defendants' argument fails.

■ Plaintiff cross-appeals, assigning error to the denial of its claims for *quantum meruit* and for prejudgment interest. Because plaintiff has recovered the amount owed under the contract in its lien foreclosure action, we need not reach the alternative argument on the *quantum meruit* claim. *King v. All Pro Services, Inc.*, 120 Or App 479, 484, 852 P2d 943 (1993).

■ Plaintiff also cross-appeals from the trial court's denial of its request for prejudgment interest under ORS 701.420(2). That statute provides for one percent monthly interest on payments withheld from a contractor or subcontractor under ORS 701.420(1). That subsection, in turn, allows an owner, contractor or subcontractor to withhold up to five percent of the contract price as "retainage." "Retainage" is defined as "the difference between the amount earned * * * under a construction contract and the amount paid on the contract * * *." ORS 701.410(4). Plaintiff appears to argue that defendants treated the entire contract price as retainage when they delayed payment to plaintiff based on their belief that plaintiff had breached the subcontract.

■ The trial court denied plaintiff's claim, stating "I do not feel that [ORS 701.420(2)] applies in this situation." We agree. Retainage is a portion of the contract price deliberately withheld to assure that a contractor or subcontractor will satisfy its obligations and complete a project. *Contractors, Inc. v. Tri-Met*, 94 Or App 392, 394 n 1, 766 P2d 389 (1988), *rev den* 307 Or 571 (1989). In this case, defendants withheld payment based on a good faith disagreement regarding the terms of the parties' contract, not as retainage. The trial court did

not err in denying plaintiff's claim for prejudgment interest under ORS 701.420(2).

Affirmed on appeal and on cross-appeal.