Argued and submitted August 23, 2001, reversed and remanded February 20, 2002

TUALATIN VALLEY BUILDERS SUPPLY, INC.,
an Oregon corporation,
and Washington Mutual Savings,
a Washington banking corporation,
as assignee of Tualatin Valley Builders Supply, Inc.,
an Oregon corporation,
*Respondents,*

*v.*

TMT HOMES OF OREGON, INC.,
an Oregon corporation;
Tofigh Tahvili; Chang T. Le;
Washington Mutual Bank,
a Washington banking corporation;
Tigard Sand & Gravel Co., Inc.,
an Oregon corporation;
Medallion Industries, Inc.,
an Oregon corporation;
Rayborn's Plumbing, Inc.,
an Oregon corporation;
Pacific Lumber Co.,
an Oregon corporation;
Canby Drywall, Inc.,
an Oregon corporation;
and JBC Roofing, LLC,
an Oregon limited liability company,
*Defendants,*

*and*

CUMBERLAND CASUALTY & SURETY COMPANY,
a Florida corporation,
*Appellant.*

C98147CV; A110171

41 P3d 429

576

Herb Weisser argued the cause and filed the brief for appellant.

No appearance for respondent Tualatin Valley Builders Supply, Inc.

Christopher T. Carson argued the cause for respondent Washington Mutual Savings. On the brief were James P. Laurick, Gregory B. Snook and Kilmer, Voorhees & Laurick, P.C.

Before Linder, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

LINDER, J.

## LINDER, J.

ORS 87.076 allows the owner of land against which a construction lien has been perfected, or any other interested party, to purchase a bond in order to secure payment of the construction lien and to free the property from that lien. If, after purchasing the bond, the owner or other interested party notifies the lien claimant that it has secured the bond, the lien attaches to the bond. Once the lien attaches to the bond, the property is freed from the lien and the claimant must proceed with any foreclosure action against the bond only. In this case, the other interested party, TMT Homes of Oregon, Inc. (TMT), did not give notice to the lien claimant, Tualatin Valley Builders Supply, Inc. (TVBS) and, as a result, the trial court concluded that TVBS could *either* foreclose its lien on the property *or* could recover against the bond. TVBS[1] elected to recover against the bond, and the trial court entered judgment in the amount of the lien against the bond surety, Cumberland Casualty & Surety Co. (Cumberland). Cumberland appeals from that judgment, arguing that the trial court, in giving TVBS such a remedy, construed the lien bond statutes incorrectly. We agree, and reverse.

The facts are undisputed. TMT was the general contractor on a construction project on land located in Washington County, designated as "Lot 11, Kolding Grove." TMT hired TVBS to be a subcontractor on that project. TMT, for whatever reason, failed to pay TVBS for the materials and labor that it provided on the project. Consequently, TVBS perfected a construction lien on Lot 11 and, within the statutory time period, filed an action in which, among other claims for relief, TVBS sought to foreclose the lien claim on the real property.

After TVBS perfected its lien claim, TMT purchased a bond from Cumberland to secure the lien's payment. The bond identified TMT and Cumberland as joint obligors. TMT

---

[1] Washington Mutual Savings held a mortgage on the real property against which TVBS placed its lien. To protect that interest, Washington Mutual paid TVBS the amount of its lien. TVBS in turn assigned its lien to Washington Mutual. On appeal, Washington Mutual proceeds as the assignee of TVBS but, for simplicity, all references to the lien claimant in this opinion are to TVBS.

recorded the bond but failed to notify TVBS that it had secured the bond. Nevertheless, TVBS became aware of that fact and amended its complaint. In the amended complaint, TVBS continued to seek to foreclose against the real property. TVBS also, however, added an additional claim in which it named Cumberland as a defendant. That claim was designated an "action on release of lien bond." In support of that claim, TVBS pleaded that the bond had not been properly served on TVBS as required by ORS 87.078(1) and that the real property therefore was not released from the lien. TVBS nevertheless asserted a right to recover on the bond by alleging: "Nevertheless the bond serves as defendant Cumberland's undertaking to pay any sum which the plaintiff may recover on the lien claim, together with its costs and attorney fees."

Cumberland then moved for summary judgment, arguing that, because TMT had not given statutory notice of the bond purchase, the lien had not attached to the bond and, consequently, Cumberland was not liable to TVBS for its lien on Lot 11. In response, TVBS argued that, even if the lien did not attach to the bond, TVBS could recover the amount of its lien from the bond because it was an intended third-party beneficiary of the bond contract between TMT and Cumberland. The trial court denied the motion for summary judgment, concluding that the lien bond statutes allowed the lien claimant to foreclose on the property or to recover against the bond, even if the lien had not attached to the bond. The trial court expressly declined to reach or address TVBS's third-party beneficiary theory.

On appeal, Cumberland renews its argument. We first address whether the trial court erred in its conclusion that the lien bond statutes, ORS 87.076 to 87.088, give a lien claimant in these circumstances the option to recover the amount of its lien either from the bond or the property to which the lien is attached. We begin by examining the text and the context of the statutes, pursuant to the interpretative methodology outlined in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

The trial court based its ruling on Cumberland's motion for summary judgment on three principal conclusions: (1) TVBS's lien did not attach to the bond because TMT

did not give notice of the bond purchase as ORS 87.078(1) requires; (2) because the notice provisions of "ORS 87.078 [were] intended to benefit the person who purchased the bond, and the lien claimant," the lien claimant could proceed against the bond as though notice was given "even though the lien d[id] not attach to the bond"; and (3) because the lien did not attach to the bond, the real property was not freed from the lien, and, "therefore, TVBS [could] elect to pursue either the bond * * * or to foreclose on the real property." In effect, the trial court concluded that the statutory scheme gives the lien claimant an action against the bond as well as the right to foreclose the lien on the real property. As we describe below, however, neither ORS 87.078(1) nor any of the other statutes that apply to construction liens and lien bonds creates that dual remedy for a lien claimant.

The plain language of three of the lien bond statutes, and the relationship of those statutes to one another, leads us to our conclusion. First, ORS 87.076 prescribes when and how a bond or deposit of money may serve as the object against which a construction lien attaches, in lieu of the real property or improvement on which that lien has been perfected. Specifically, the "owner of an improvement or land against which" a perfected construction lien is claimed, or "other interested person," may obtain a bond or may deposit a sum of money with the county treasurer any time after a claimant has perfected his or her lien. ORS 87.076. If the owner or interested person chooses to obtain a bond, the bond must be purchased from a corporation authorized to issue surety bonds in Oregon and must be recorded in the county where the lien was filed. ORS 87.076(1). Alternatively, the owner or interested person may deposit with the county treasurer money as specified in ORS 87.076(2)(a) (150 percent of the lien, or $1,000, whichever is greater).

ORS 87.083(1), in turn, prescribes the effect of the purchase of such a bond or deposit of money on a pending action to foreclose a lien:

"Any suit to foreclose a lien pursuant to ORS 87.060 which is commenced or pending after the filing of a bond or deposit of money under ORS 87.076 shall proceed as if no filing or deposit had been made except that *the lien shall*

*attach to the bond or money upon the filing or deposit and the service of notice thereof upon the lien claimant.* The property described in the claim of lien shall thereafter be entirely free of the lien and shall in no way be involved in subsequent proceedings."

(Emphasis added.) By its plain terms, the statute unambiguously shifts the lien from the property to the bond or the deposit of money and requires the claimant to proceed with the foreclosure action against that substituted property. *See id.*; *see also* ORS 87.060 (prescribing the procedures for a foreclosure action). Moreover, once the bond or money has been substituted for the real property or improvement, the lien claimant is barred from pursuing a foreclosure action on that property. *Id.*

Finally, the provision central to this dispute, ORS 87.078, prescribes that the owner or interested party must provide notice of the substitute property to the lien claimant. Specifically, the person who purchases the bond or deposits money "shall cause to be served upon the lien claimant a notice of the filing or deposit." ORS 87.078(1). If notice is not given, "the filing of the bond or the deposit of money is of no effect and the provisions of ORS 87.083 shall not apply[.]" ORS 87.078(2). Because ORS 87.083 does not apply unless notice is given, a necessary consequence of the failure to give notice is that the lien does not attach to the bond or to the deposit of money; instead, it remains on the property. *See id.*; *see generally A-C Construction, Inc. v. Bakke Corp.*, 153 Or App 41, 51, 956 P2d 219, *rev den* 327 Or 553 (1998) (recognizing that, in that case, the "lien transferred from * * * property to * * * bond when that bond was filed").

■   The statutory scheme, as it pertains to this dispute, is straightforward. When a construction lien claimant perfects the lien against property, the property owner (or other interested party) may secure a lien bond. If notice of the bond is properly given to the lien claimant, then the lien shifts from the property to the bond. Any foreclosure action then may be brought only against the bond. On the other hand, if proper notice is not given, the lien continues to attach to the property and the property remains subject to foreclosure. The

statute does not provide for any other or additional remedy against the bond in that circumstance.

Here, the parties agree that TMT never gave notice to TVBS and that, as a result, the lien did not attach to the bond. TVBS thus concedes that it was not entitled to foreclose on the bond. TVBS argues, however, that the trial court's ruling was correct, because the statute provides only that the "filing" of the bond is not effective, which in turn means that the lien does not shift to the bond. According to TVBS, because nothing in the statutes provides that the bond itself is of no effect, the bond remains effective as an agreement between the surety and the property owner.

That may be correct, but it is beside the point for present purposes. The issue is whether the statutes give a lien claimant a right, by way of a foreclosure action or otherwise, to pursue the bond as an alternative remedy of some kind. As we have already discussed, the statutes simply do not give a lien claimant the right to pursue the bond where notice has not been given. In that circumstance, the statutory foreclosure action runs only against the original property that was the object of the lien, contrary to the trial court's grant of judgment against Cumberland. The fact that the bond may be effective for other purposes and that a lien claimant may have remedies other than those provided by the lien statutes does not change that conclusion.

■■■ TVBS next asserts what is best described as an alternative ground for affirmance, arguing that it is a third-party beneficiary to the bond contract and should be able to enforce the bond in that capacity.[2] The decision to affirm a trial

---

[2] In its respondent's brief, TVBS does not explicitly identify that argument as an alternative ground for affirmance, but simply suggests that the trial court's ruling was correct because the bond contract had independent force and effect. Cumberland, in its reply brief, characterizes that argument as one that should have been cross-assigned as error, but was not:

"The trial court rejected the third-party beneficiary argument, and Washington Mutual has failed to cross-assign as error the trial court's ruling on this issue."

The trial court did not reject that argument, but rather declined to consider it. In all events, a cross-assignment of error is not required when, as here, the respondent embraces the trial court's ruling and seeks only to defend the ruling based on alternative *reasoning. Oak Crest Const. Co. v. Austin Mutual Ins. Co.*, 329 Or 620, 626, 998 P2d 1254 (2000).

court's ruling on an alternative basis is discretionary. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001). The exercise of that discretion is inappropriate where the record developed below might have developed differently if the alternative basis had been raised. *Id.* at 660. Here, Cumberland moved for summary judgment. TVBS replied, arguing that summary judgment should be denied because TVBS was a third-party beneficiary of the bond contract. Significantly, TVBS did not cross-move for summary judgment and did not later move for summary judgment. Thus, TVBS asserted its contractual theory only as a basis to avoid summary judgment against it as a matter of law, not as an entitlement to judgment in its favor as a matter of law. After the trial court denied Cumberland's motion for summary judgment, TVBS indicated that it would "elect" to recover from the bond rather than to foreclose its interest in the real property. The trial court then concluded that TVBS had "established each and every element necessary to perfect its claim of lien against the real property" and *sua sponte* entered a judgment for TVBS and against Cumberland. In effect, after determining that TVBS could elect to pursue the bond, trial court summarily found the lien to be valid and gave judgment to TVBS with no further proceedings of any kind. The factual record relative to the rights, liabilities, and potential defenses under the contract was never developed and those issues were not adjudicated. Given that posture, affirmance of the trial court's ruling on the alternative contractual grounds for relief is not appropriate.

Cumberland also assigns error to the trial court's denial of the request for attorney fees that it made in its motion for summary judgment. It argues that the trial court should have awarded attorney fees to it as the prevailing party under ORS 87.060(5). That statute provides: "In a suit to enforce a lien perfected under ORS 87.035 the court shall allow a reasonable amount as attorney fees at trial and on appeal to the party who prevails on the issues of the validity and foreclosure of the lien." The express terms of the statute are significantly limiting. The statute provides a right to attorney fees only in a suit to enforce a lien perfected under ORS 87.035. In turn, ORS 87.035 pertains only to the lien

perfected against the property. An action to enforce the lien against the property becomes one against a lien bond only if the lien claimant had proper notice of the bond.

■■ Throughout this proceeding, all parties in effect have agreed that there is no perfected lien on the bond and that the bond could not be the object of the foreclosure action itself. TVBS thus argued, and the trial court agreed, that the statutes implied some additional right to pursue the bond as an alternative to the action to enforce the perfected lien on the property. Cumberland is now the prevailing party as to that putative action—we hold in this case that the statutes create no such action. But that does not mean Cumberland can recover attorney fees. The right to recover attorney fees must be expressly granted by a statute or contractual provision authorizing the award. *Lewis v. Dept. of Rev.*, 294 Or 139, 142, 653 P2d 1265 (1982). The statutes specifically provide for attorney fees only for the party who prevails in an action to enforce the perfected lien. Whatever else the claim naming Cumberland and seeking to pursue the bond purported to be, it was not an action to enforce a perfected lien under ORS 87.035.

Reversed and remanded.